837 F.2d 561
 10 Fed.R.Serv.3d 199, RICO Bus.Disp.Guide 6855
 CREATIVE BATH PRODUCTS, INC., Mathias Meinzinger, and
Gunther Bartsch, Plaintiffs-Appellants, Cross-Appellees,
v.
CONNECTICUT GENERAL LIFE INSURANCE COMPANY and Robert
Ferina, Defendants-Appellees, Cross-Appellants.
 Nos. 155, 212, Dockets 87-7436, -7452.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 19, 1987.
Final Briefs Submitted Dec. 1, 1987.
Decided Jan. 20, 1988.
 
 Frank A. Weg, New York City (Ira M. Myers, Jonathan Murphy, Weg and Myers, P.C., New York City, on the brief), for plaintiffs-appellants-cross-appellees.
 Christopher R. Belmonte, New York City (Nora V. Granito, Lane & Mittendorf, New York City, on the brief), for defendants-appellees-cross-appellants.
 Before LUMBARD, KEARSE, and ALTIMARI, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiffs Creative Bath Products, Inc. ("Creative Bath"), Mathias Meinzinger and Gunther Bartsch appeal from so much of a final judgment of the United States District Court for the Eastern District of New York, Leonard D. Wexler, Judge, as summarily dismissed their amended complaint for failure to assert a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sec. 1961 et seq. (1982 & Supp. IV 1986) ("RICO"). The court dismissed plaintiffs' RICO claim for lack of a sufficient pattern of racketeering activity, see 18 U.S.C. Sec. 1961(5), and dismissed their pendent state-law claims for lack of subject matter jurisdiction. Defendants Connecticut General Life Insurance Company ("Connecticut General") and Robert Ferina cross-appeal from so much of the judgment as denied their motion to sanction plaintiffs pursuant to Fed.R.Civ.P. 11. For the reasons below, we affirm.
 
 BACKGROUND
 
 2
 Plaintiffs commenced the present action in 1985, alleging that they had purchased four life insurance policies from Connecticut General through Ferina, a licensed insurance agent. As finally amended, the complaint alleged that, in selling the policies to plaintiffs, Ferina made three false representations: (1) he falsely assured the plaintiffs that the policies could be returned at any time without penalty; (2) he inserted in the application for the insurance policies a statement that the new policies were not replacing older policies, knowing that statement to be false, and allowed the application to be processed through the mails and wires; and (3) he told the plaintiffs in writing that their policies would have a substantial cash surrender value at the end of the first year, when in fact the policies would have no real cash surrender value. Plaintiffs alleged conclusorily that defendants had also used the mails and wires in making fraudulent misrepresentations to other insureds. Discovery revealed, inter alia, that Meinzinger and Bartsch were partners in Creative Bath and another company and that the life insurance policies in question had been purchased by the companies and insured the lives of the partners in favor of the companies.
 
 
 3
 Following discovery, defendants moved to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), and 56, on the ground that plaintiffs' allegations and the evidence unearthed during discovery failed to demonstrate that defendants had engaged in the pattern of racketeering activity required to sustain a civil RICO claim. Defendants also moved for sanctions pursuant to Rule 11 on the ground, inter alia, that the attempted assertion of a civil RICO claim was frivolous. Plaintiffs argued that the motion to dismiss should be denied either because the three alleged misrepresentations to the plaintiffs constituted a sufficient RICO pattern or because defendants had engaged in more than one scheme to defraud insurance buyers. In support of the latter contention, plaintiffs proffered Connecticut General worksheets used in connection with insurance policies written for other persons and argued that defendants had also made fraudulent misrepresentations, by statement and material omission, to these other insurance buyers.
 
 
 4
 In a Memorandum and Order dated April 17, 1987, the district court granted defendants' motion to dismiss, finding that plaintiffs had "failed adequately to support their claim that defendants engaged in a pattern of improper activities in the sale of insurance policies." Id. at 4. The court found that plaintiffs had not adequately shown more than a single scheme since the documents submitted by plaintiffs, purporting to demonstrate that defendants had also defrauded others, did not reflect affirmative misrepresentations and were not required to be complete as to all details of the insurance; the court found that the allegedly omitted information was revealed in the policies themselves. It also rejected plaintiffs' principal contention, ruling that the "three supposedly fraudulent actions taken during the course of a single 'scheme' involving a single transaction, namely, the sale of life insurance policies to Meinzinger and Bartsch, cannot justifiably be deemed to satisfy RICO's requirement that there be a 'pattern' of racketeering activity." Id. at 3.
 
 
 5
 Having ruled that the complaint failed to state a claim under RICO, which was the only basis for federal jurisdiction, the court also dismissed plaintiffs' pendent state-law claims. The court denied defendants' Rule 11 motion sub silentio and ordered each side to bear its own costs of the lawsuit.
 
 
 6
 Plaintiffs have appealed the dismissal of their complaint, arguing that even if the complaint reveals but one scheme, a finding with which they disagree but do not argue, the commission of three fraudulent acts in furtherance of a single scheme suffices to meet RICO's requirement of a "pattern" of racketeering acts. Defendants have cross-appealed the denial of sanctions.
 
 
 7
 We conclude that this Court's RICO decisions require affirmance of the dismissal and that the district court did not abuse its discretion in denying the motion for sanctions.
 
 DISCUSSION
 
 8
 In Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 495-96, 105 S.Ct. 3275, 3285-86, 87 L.Ed.2d 346 (1985), the Supreme Court explored the contours of RICO's requirement of a pattern of racketeering activity. The court stated, inter alia, that the legislative history of RICO supported the view that
 
 
 9
 two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern."
 
 
 10
 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (quoting S.Rep. No. 617, at 158, 91st Cong., 2d Sess. (1969)) (emphasis in Sedima). In United States v. Ianniello, 808 F.2d 184, 192 (2d Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987), this Court viewed as dictum the Sedima discussion of the number of acts needed to constitute a pattern, and we ruled that where there was a continuing RICO "enterprise," see 18 U.S.C. Sec. 1961(4), two related predicate acts would suffice to establish a pattern within the meaning of RICO.
 
 
 11
 Our cases since Ianniello have interpreted the "continuity plus relationship" factor emphasized in Sedima, and adverted to in Ianniello, as requiring that the plaintiff establish the existence of an enterprise whose illicit activities or unlawful goals are continuing ones. See, e.g., Albany Insurance Co. v. Esses, 831 F.2d 41 (2d Cir.1987); Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46 (2d Cir.1987), cert. denied --- U.S. ----, 108 S.Ct. 698, 98 L.Ed.2d 650 see also United States v. Benevento, 836 F.2d 60, 73 (2d Cir. 1987). Thus, in Beck, we ruled that the complaint against Manufacturers Hanover Trust Co. and others for allegedly unlawful dealing with certain collateral securing plaintiffs' bonds failed adequately to allege a RICO enterprise because "the enterprise alleged by plaintiffs had but one straightforward, short-lived goal--the sale of the U.S. collateral at a reduced price." 820 F.2d at 51. Similarly, in Albany, we affirmed the dismissal of a RICO complaint where an insurer claimed that the insured defendants had committed mail fraud and arson; we found the enterprise requirement unsatisfied because "the purpose of the enterprise alleged in Albany's amended complaint had an 'obvious terminating goal or date'--inducing the insurer of its goods to pay a false insurance claim." 831 F.2d at 44 (quoting Ianniello, 808 F.2d at 192).
 
 
 12
 Because Ianniello establishes that two related predicate acts suffice to constitute a RICO "pattern," it was probably error in the present case for the district court to rule that the pattern requirement could not be satisfied by a showing that there were three fraudulent actions during the course of a single scheme. See, e.g., Beck, 820 F.2d at 51. Nonetheless, our post-Ianniello cases establish that the amended complaint was properly dismissable for plaintiffs' failure to establish "continuity" as that factor relates to the RICO enterprise. Because the court properly rejected plaintiffs' contention that their evidence showed defendants to have engaged in other fraudulent schemes, plaintiffs' case consisted of the proposition that defendants had made three fraudulent representations in pursuit of a single short-lived goal, i.e., the sale to Creative Bath and its affiliated company of the four insurance policies on the lives of the two partners. That RICO claim is not distinguishable in a meaningful way from those claims whose dismissals were upheld in Beck and Albany. Accordingly, we affirm the judgment of dismissal.
 
 
 13
 Defendants' contention that they were entitled to sanctions pursuant to Rule 11 need not detain us long. This action was commenced prior to this Court's rulings in Albany, Beck, and even Ianniello; the final amended complaint was filed prior to Beck and Albany, the two authorities most clearly warranting its dismissal. There is no basis for requiring plaintiffs to have anticipated the direction that this Court's post-Sedima decisions would take; indeed, we concede that our route may not have been the clearest and most predictable. Plainly the district judge must have found no bad faith on the part of plaintiffs in asserting their claims, for he did not even follow the routine course of ordering plaintiffs as the losing party to pay ordinary court costs to defendants, and ordered instead that each party bear its own costs. The denial of sanctions was not an abuse of discretion.
 
 CONCLUSION
 
 14
 The judgment of the district court is in all respects affirmed. Costs to defendants on the main appeal; costs to plaintiffs on the cross-appeal.