**UNITED STATES of America, Appellee,**

v.

**Anthony INDELICATO,
Defendant–Appellant.**

**Nos. 98, 106, Dockets 87–1085, 87–1215
and 87–1075 L.**

United States Court of Appeals,
Second Circuit.

Argued June 13, 1988.

Decided Jan. 13, 1989.

and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (1982 & Supp. IV 1986). He was sentenced to two consecutive 20–year terms of incarceration and a $50,000 fine. His appeal and the appeals of his codefendants were heard by a panel of this Court and remain pending before that panel. We granted this rehearing *en banc* in order to consider the limited question of whether Indelicato's participation in three murders as part of a single criminal transaction could constitute a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5). For the reasons below, we answer that question in the affirmative, and we remand the matter to the panel for further proceedings consistent with this holding.

John F. Savarese, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. S.D.N.Y., Aaron Marcu, John Gilmore Childers, Asst. U.S. Attys., Michael Chertoff, Sp. Asst. U.S. Atty., New York City, on the brief), for appellee.

Mark F. Pomerantz, New York City (Ronald P. Fischetti, Warren L. Feldman, David T. Grudberg, Fischetti & Pomerantz, New York City, on the brief), for defendant-appellant.

Gerald B. Lefcourt, P.C. (Gerald B. Lefcourt, Joshua L. Dratel, New York City, Walter P. Loughlin, Newark, N.J., of counsel), for amicus curiae Marvin Kaplan.

Before OAKES, Chief Judge,* FEINBERG,* MESKILL, NEWMAN, KEARSE, CARDAMONE, PIERCE, WINTER, PRATT, MINER, ALTIMARI, and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Anthony Indelicato has appealed from a judgment entered in the United States District Court for the Southern District of New York, after a jury trial before Richard Owen, *Judge*, convicting him of participating and conspiring to participate in the affairs of an enterprise through a pattern of racketeering activity, in violation of the Racketeer Influenced

## I. BACKGROUND

Indelicato was charged in two counts of a 25–count superseding indictment charging him and seven codefendants with various crimes arising out of operations of an organization known as the "Commission" of La Cosa Nostra, which was alleged to be the ruling body of the La Cosa Nostra organized crime families throughout the United States. The Commission was alleged to be a RICO enterprise, and Indelicato was charged with one count of participating in, and one count of conspiring to participate in, the affairs of the Commission through a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(c) and (d), respectively.

To the extent pertinent to the question considered in this *en banc* rehearing, the evidence at trial, taken in the light most favorable to the government, revealed the following. The Commission had existed for decades as the governing body of the five La Cosa Nostra families in New York City and affiliated families in other cities. Each organized crime family included a "boss" or leader, assisted by an underboss and a counselor; beneath this level were "capos" or captains, who supervised a number of people who had been made "members" or "soldiers" of the family. To be made a member of such a family, one was required

---

* Judge Oakes succeeded Judge Feinberg as Chief Judge while this matter was sub judice.

to vow obedience to the rules and orders of the Commission and to be personally approved by it for admission. The functions of the Commission included overseeing interfamily ventures and intrafamily leadership disputes. The prior approval of the Commission was required before any family boss could be killed.

The Commission consisted principally of the bosses of the five organized crime families in the New York City area. During most of the 1970's, however, it did not include a representative of one such family, the Bonanno organized crime family ("Bonanno family"), because of leadership disputes within that family. During this period, the Commission itself directly controlled the operations of the Bonanno family.

In 1979, the boss of the Bonanno family was Carmine Galante. Indelicato was a member of the family; his father was a capo; and an uncle, J.B. Indelicato, was a member. As part of an overall plan to end the factional disputes within the Bonanno family and to realign its leadership, the Commission planned and implemented the murder of Galante and two of his close associates.

In planning the murder of Galante, the Commission worked through Aniello Dellacroce, underboss of the Gambino organized crime family, Stefano Canone, the counselor of the Bonanno family, and several soldiers in the Bonanno family including Indelicato, Dominic Trinchera, and Cesare Bonventre. Thus, in May or June 1979, Trinchera introduced Indelicato to one Louis Giongetti, a lifelong felon. Indelicato asked Giongetti whether he had ever "hit," *i.e.*, killed, anyone. Giongetti assured Indelicato that he was experienced and trustworthy. In early July, Indelicato and Trinchera met in a bar with Giongetti; Trinchera sent Giongetti to a "safe house" to retrieve a cache of shotguns and other weapons.

On July 12, 1979, Indelicato and two other men, all wearing ski masks, entered a restaurant in Brooklyn, New York, where Galante, his cousin Giuseppe Turano, and Galante's friend and associate Leonard Coppola were having lunch. Using guns of the type earlier amassed at the bar, Indelicato and his two companions shot and killed Galante, Turano, and Coppola. The victims were shot numerous times at close range with several weapons. The evidence also showed that two other men, including Bonventre, who had accompanied Coppola to lunch and were uninjured in the shootings, had joined in shooting Coppola, Turano, and Galante.

Indelicato and his two companions fled in a car stolen a month earlier. After abandoning that car, Indelicato immediately went with his father, his uncle J.B., and Phillip Giaccone, another Bonanno family capo, to a social club in Manhattan to report his success to Dellacroce and Canone. A surveillance videotape showed Indelicato being congratulated by Canone.

Thereafter, Indelicato remained involved with the Commission. He, Trinchera, and Bonventre were promoted to the rank of capo. Indelicato maintained that rank until at least 1981.

The three murders were the only RICO predicate acts alleged against Indelicato. He was not named in any of the remaining 23 counts of the indictment. The proof at trial relating to the three murders included, in addition to the above, ballistics and medical forensic evidence, eyewitness evidence, and Indelicato's palm print on an inside door handle of the getaway car. Indelicato was convicted on both of the counts against him. His appeal and the appeals of his codefendants were heard before a panel of this Court in September 1987, and those appeals remain pending.

Indelicato's principal argument on appeal is that proof of his commission of, or agreement to commit, three murders as part of a single criminal transaction is insufficient to establish a "pattern of racketeering activity" within the meaning of RICO. In April 1988, we agreed to rehear this issue *en banc*, in tandem with an *en banc* rehearing of *Beauford v. Helmsley*, 843 F.2d 103 (1988). For the reasons below, we conclude that the facts proven by the government are sufficient to establish a RICO pattern.

## II. DISCUSSION

RICO § 1962(c) makes it unlawful, in pertinent part,

for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 U.S.C. § 1962(c). Section 1962(d) makes it unlawful to conspire to violate §§ 1962(a), (b), or (c). The terms "enterprise," "racketeering activity," and "pattern of racketeering activity" are defined in 18 U.S.C. § 1961, in pertinent part, as follows:

(1) "racketeering activity" means (A) any act or threat involving [*inter alia*] murder, kidnaping, gambling, arson, robbery, bribery, extortion, ... which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 224 (relating to sports bribery), ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), ... section 1952 (relating to racketeering), ... sections 2314 and 2315 (relating to interstate transportation of stolen property), ... (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving ... the felonious manufacture, importation, ... or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States....

....

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity; ....

18 U.S.C. §§ 1961(1), (4), and (5).

Our assessment of Indelicato's contention that his commission of three murders as part of a single criminal episode or transaction cannot be considered a RICO "pattern" requires a review of the development of Second Circuit doctrine as to the RICO concept of pattern both before and after the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ("*Sedima*").

### A. *Early Second Circuit Interpretations of "Pattern"*

Following the enactment of RICO, few cases in this Court required us to focus closely on the meaning and content of the statutory definition of "pattern of racketeering activity." In those that did, we generally gave "pattern" a generous reading.

In *United States v. Parness*, 503 F.2d 430 (2d Cir.1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975), we considered a conviction under 18 U.S.C. § 1962(b), which makes it unlawful to, *inter alia*, acquire an interest in or control of an enterprise through a pattern of racketeering activity. A defendant convicted of gaining control of a hotel in violation of this section contended that there was insufficient proof of the requisite number of acts of racketeering activity to constitute a pattern. We affirmed the conviction, noting that on February 4, 1971, this defendant had caused the interstate transport of stolen funds, in violation of 18 U.S.C. § 2314 (1970); that on February 4, he had caused the victim of his scheme to travel in interstate commerce to pick up two checks representing the stolen funds, also in violation of § 2314; and that on February 9, the defendant had caused the interstate transport of an additional check representing stolen funds, in violation of the same section. We concluded that a RICO pattern

had been adequately proven: "Parness was charged with and convicted of three separate violations of § 2314.... Convictions on any two of these counts were sufficient under § 1961(5) to establish the 'pattern of racketeering activity' necessary for a conviction under § 1962(b)." 503 F.2d at 438.

Shortly thereafter, the district court in *United States v. Moeller*, 402 F.Supp. 49 (D.Conn.1975), interpreting the statement that "any two" of the *Parness* acts sufficed to establish a RICO pattern as a ruling that even the very closely related acts that occurred on the same day constituted a pattern, expressed its skepticism: "While the statutory definition makes clear that a pattern can consist of only two acts, I would have thought the common sense interpretation of the word 'pattern' implies acts occurring in *different criminal episodes*, episodes that are at least somewhat separated in time and place yet still sufficiently related by purpose to demonstrate a continuity of activity." *Id.* at 57 (emphasis in original). On the authority of *Parness*, however, the court concluded that the kidnaping of three employees who worked in a building, followed by arson on the building on the same day, could constitute a RICO pattern in a prosecution under § 1962(c). *Id.* at 58.

In the meantime, the district court in *United States v. Stofsky*, 409 F.Supp. 609 (S.D.N.Y.1973), *aff'd on other grounds*, 527 F.2d 237 (2d Cir.1975), *cert. denied*, 429 U.S. 819, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976), confronted with an attack on the constitutionality of RICO as impermissibly vague, sought to give precise content to the pattern element. The court noted that 18 U.S.C. § 3575(e) (1982), *repealed by* Sentencing Reform Act of 1984, Pub.L. No. 473, tit. II, §§ 212(a)(1) and (2), 235(a)(1), 98 Stat. 1987, 2031, entitled "Increased Sentence for Dangerous Special Offenders" and enacted, like RICO, as part of the Organized Crime Control Act of 1970, specified that a "pattern of criminal conduct" exists when "criminal acts ... have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolat-

ed events"; it concluded that the interpretation of "pattern of racketeering activity" in RICO should be similar. Accordingly, it stated that to constitute a RICO pattern, "the racketeering acts must have been connected with each other by some common scheme, plan or motive so as to constitute a pattern and not simply a series of disconnected acts." 409 F.Supp. at 614. This Court, in affirming the eventual judgments of conviction, was not called upon to address the district court's interpretation of the "pattern" requirement.

In *United States v. Weisman*, 624 F.2d 1118, 1123 (2d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980), we substantially undercut *Stofsky*'s interpretation of the pattern requirement, for we rejected the defendants' contention that the jury should have been charged that it could not find a RICO pattern on the basis of two predicate acts "unless the predicate acts were also found to be 'related' to each other through a 'common scheme, plan or motive.'" *Id.* at 1121. Weisman was convicted of a number of offenses, including nine counts of securities fraud committed in 1973, nine counts of bankruptcy fraud in connection with the financial problems of a theatre opened in 1975, and one count of participating in the affairs of an enterprise through a pattern of racketeering, in violation of § 1962(c). He contended that no RICO pattern had been proven because, *inter alia*, the securities frauds (which the trial court had charged the jury could constitute only a single predicate act because they arose "out of the same episode," *id.* at 1124 n. 5) and the bankruptcy frauds were not related to each other. We rejected this contention both on the facts and in principle.

Without commenting on the trial court's "same episode" theory, we concluded that even counting the nine securities frauds as one act, the securities fraud and bankruptcy frauds were all related to the theatre and could "constitute ten separate predicate acts of racketeering, any two of which would be sufficient to sustain the conviction on the RICO count." *Id.* at 1124. Noting that if a direct relationship between

the acts were required, it had been amply proven by reason of similarity of victims, goals, and methods, *id.* at 1123 n. 4, we stated that "the statutory language does not expressly require that the predicate acts of racketeering be specifically 'related' to each other." *Id.* at 1122. We agreed with Weisman that RICO was not intended to apply to sporadic and unrelated criminal acts, but we concluded that where each act was related to the conduct of the affairs of a RICO enterprise, the jury was entitled to find a RICO pattern. *Id.* ("the enterprise itself supplies a significant unifying link between the various predicate acts specified in section 1961(1) that may constitute a [RICO] 'pattern' ").

Following our *Weisman* decision, we ruled that predicate acts related to an enterprise were sufficient to support a conviction under § 1962(c) even though they were not in furtherance of the enterprise, where the defendant used his position in the enterprise to commit those acts. *See United States v. LeRoy,* 687 F.2d 610, 616–17 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983); *United States v. Scotto,* 641 F.2d 47, 53–55 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). In *LeRoy,* we held that a pattern was established by proof that the defendant had committed "more than two" violations of 29 U.S.C. § 501(c) (1976) or 29 U.S.C. § 186 (1976). 687 F.2d at 617. In *Scotto,* we held that the jury was properly instructed that in order to find a RICO pattern it needed to find that the defendant had committed "two or more" of the alleged violations of § 186. 641 F.2d at 54–55.

In *United States v. Mazzei,* 700 F.2d 85 (2d Cir.), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983), we upheld a conviction under § 1962(c) in which the enterprise was a group of persons associated in fact who traveled in interstate commerce in order to bribe contestants in various college basketball games, and the RICO pattern was defendants' attempts to influence the outcome of those basketball games, in violation of 18 U.S.C. § 224 (1976), and their interstate travel in aid of that goal, in violation of 18 U.S.C. § 1952

(1976). Mazzei contended that no RICO violation had been shown because the alleged enterprise was indistinguishable from the alleged pattern of racketeering activity. We rejected this contention, ruling that the pattern and the enterprise need not be totally "distinct and independent, as long as the proof offered is sufficient to satisfy both elements." 700 F.2d at 89. *See also Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 22 (2d Cir.1983) (rejecting district court's view that plaintiff in private RICO action brought under 18 U.S.C. § 1964(c) was required to allege facts showing that the enterprise had an " 'independent economic significance from the pattern of racketeering activity' " (quoting 553 F.Supp. 1347, 1363 (S.D.N.Y.1983))), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

Thus, prior to the Supreme Court's 1985 decision in *Sedima* and our interpretation of *Sedima* in *United States v. Ianniello,* 808 F.2d 184 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987), this circuit had liberally construed the RICO pattern element as not requiring, in connection with § 1962(c), that the predicate acts be "specifically" related to each other, so long as they were related to the conduct of the affairs of the enterprise, and as not requiring, in connection with § 1962(b), that the predicate acts be separated in time or place or be parts of separable episodes or in furtherance of different schemes.

In the meantime, as discussed below, this Court gave more restrictive interpretations in civil RICO cases to other preconditions to recovery, which led to the Supreme Court's decision in *Sedima.*

B. Sedima's *Footnote 14 and* Ianniello's *Interpretation of It*

In *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346, the Supreme Court considered for the first time the civil action provisions of RICO, reversing a decision of this Court which held that a civil action could not be maintained unless (1) the defendant had already been convicted of a predicate racketeering

act or of a RICO violation, and (2) the plaintiff could show special racketeering injury. *See Sedima, S.P.R.L. v. Imrex Co.,* 741 F.2d 482 (2d Cir.1984), *rev'd,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *see also Bankers Trust Co. v. Rhoades,* 741 F.2d 511 (2d Cir.1984) (plaintiff required to show injury flowing from "pattern" rather than from individual racketeering acts), *vacated and remanded,* 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985). The *Sedima* Court observed that

> RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, see *United States v. Turkette,* 452 U.S. 576, 586–87 [101 S.Ct. 2524, 2530–31, 69 L.Ed.2d 246] (1981), but also of its express admonition that RICO is to "be liberally construed to effectuate its remedial purposes," Pub.L. 91–452, § 904(a), 84 Stat. 947,

473 U.S. at 497–98, 105 S.Ct. at 3285–86, and it concluded that recovery in a civil RICO action did not require proof of either a prior conviction or a special type of injury.

In discussing the nature of the injury that must be shown, the Supreme Court noted that the civil RICO plaintiff must allege the defendant's "(1) conduct (2) of an enterprise (3) through a pattern [14] (4) of racketeering activity," 473 U.S. at 496, 105 S.Ct. at 3285, and that the statute requires no more than this, *id.* at 497, 105 S.Ct. at 3285. Footnote 14, which discussed the nature of the "pattern" requirement and its relationship to individual acts of racketeering activity, stated as follows:

> As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pat-

tern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan).... Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the [Organized Crime Control] Act.

*Id.* at 496 n. 14, 105 S.Ct. at 3285 n. 14 (emphasis in *Sedima* ).

In discussing the relationship between "pattern" and "enterprise" in *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the Court had stated as follows:

> In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. [§ 1961(1).] The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates

function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

*Id.* at 583, 101 S.Ct. at 2528–29.

In *United States v. Ianniello,* 808 F.2d 184, we affirmed convictions under § 1962(c) in connection with the defendants' skimming of profits from several New York City restaurants and bars and their fraudulent procurement of liquor licenses in aid of that practice. On appeal, the defendants argued, *inter alia,* (1) that our decision in *Weisman,* 624 F.2d 1118, should be reconsidered in light of *Sedima*'s statement in footnote 14 that two acts are necessary but not sufficient to constitute a RICO pattern, and (2) that two acts of mail fraud in the procurement of liquor license renewals in successive years were parts of a single scheme and thus could not, as a matter of law, constitute a pattern. We rejected both contentions.

We declined to reconsider *Weisman,* stating (a) that *Sedima* did not address *Weisman,* (b) that the *Sedima* footnote's observation that separate acts must exhibit some combination of relationship and continuity in order to constitute a pattern was not inconsistent with *Weisman,* and (c) that in any event "[b]ecause the *Sedima* footnote does not rise to the level of a holding, it is not controlling," 808 F.2d at 190. *Ianniello* therefore stated its adherence to *Weisman,* which it read as holding "that two predicate acts can suffice to satisfy the pattern requirement of RICO." *Id.* Since *Weisman* had indicated that the requisite relationship between racketeering acts could be found in the fact that each of them was related to a RICO enterprise, *Ianniello* concluded that "the inquiry as to

relatedness and continuity," which *Sedima* suggested should be made in assessing whether there is a pattern, "is best addressed in the context of the concept of 'enterprise.'" *Id.* at 191.

On the facts before us in *Ianniello,* we concluded that continuity of enterprise was adequately shown:

an enterprise with "a single purpose," here fraud continuing indefinitely, can provide the basis for a section 1962(c) violation. The common purpose in this case was to skim profits and had no obvious terminating goal or date, clearly establishing the enterprise requirement.

*Id.* at 191–92. We also rejected the contention that evidence of two racketeering acts in pursuit of a single unlawful goal is insufficient to prove a RICO pattern and that establishment of more than one unlawful scheme is necessary:

Instead, we hold that when a person commits at least two acts that have the common purpose of furthering a continuing criminal enterprise with which that person is associated, the elements of relatedness and continuity which the *Sedima* footnote construes section 1962(c) to include are satisfied.

*Id.* at 192; *see also id.* n. 16 ("definition of pattern requires at least two acts of racketeering activity, not two schemes").

C. *This Circuit's Post-*Ianniello *Decisions*

In the wake of *Ianniello,* the district courts of this circuit divided over whether the *Ianniello* holding that two predicate acts sufficed to satisfy the pattern requirement applied in civil RICO actions. Some held that the same rules apply in both criminal and civil RICO cases, *e.g., City of New York v. Joseph L. Balkan, Inc.,* 656 F.Supp. 536, 544–45 (E.D.N.Y.1987), while others held that *Ianniello*'s holding was limited to cases involving wholly criminal enterprises, *e.g., Franklin & Joseph, Inc. v. Continental Health Industries, Inc.,* 664 F.Supp. 719, 723–24 (S.D.N.Y.1987). *See generally Furman v. Cirrito,* 828 F.2d 898, 908–09 (2d Cir.1987) (Pratt, *J.,* dissenting and listing cases).

In a series of appeals from dismissals of civil RICO complaints, we clarified that *Ianniello*'s ruling that two predicate acts suffice to establish a RICO pattern does apply to civil RICO actions. In addition, we added gloss to *Ianniello*'s imputation of the continuity requirement to the enterprise element.

In *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46 (2d Cir.1987) (*"Beck"*), *cert. denied*, —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), the plaintiffs brought a civil RICO action complaining that the defendant bank, an indenture trustee, had breached its fiduciary duties by fraudulently making certain interest payments, selling collateral at a reduced price, and disposing of the proceeds. As predicate acts of racketeering activity, the complaint alleged that the bank had committed numerous mail frauds, in violation of 18 U.S.C. § 1341, and wire frauds, in violation of 18 U.S.C. § 1343 (1982). The district court dismissed the complaint for, *inter alia*, failure to plead a valid RICO pattern, on the ground that the alleged racketeering acts were part of a single episode and that *Sedima*'s footnote 14 interpretation of RICO pattern required proof of "multiple episodes." We rejected this interpretation of the pattern requirement as foreclosed by *Ianniello*:

> It is clear after *Ianniello* that the District Court erred in interpreting "pattern of racketeering activity" to require multiple episodes. *Ianniello* confirms that two related predicate acts will suffice to establish a pattern under 18 U.S.C. § 1961(5). [808 F.2d] at 189–90. Plaintiffs' amended complaint pleads at least two related acts of mail and wire fraud with regard to the sale of the U.S. collateral and therefore satisfies the pleading requirement for "pattern of racketeering activity."

820 F.2d at 51.

Nonetheless, noting that, "[a]s *Ianniello* recognized, whether one looks for the requisite continuity and relatedness by examining the pattern or the enterprise is really a matter of form, not substance," *id.*, we affirmed the dismissal of the *Beck* com-

plaint, concluding that it did not adequately allege a RICO enterprise. We noted that *"Ianniello* emphasizes that a plaintiff must prove the existence of a *continuing* enterprise" or *"'continuing operation'"* under § 1962(c), by showing "'an *ongoing organization,'"* and "'evidence that the various associates function as a *continuing unit.'"* 820 F.2d at 51 (quoting *Ianniello*, 808 F.2d at 191 (quoting *Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528)) (emphasis in *Beck*). We concluded that because the enterprise alleged by the *Beck* plaintiffs, insofar as the complaint adequately pleaded any fraud, had "had but one straightforward, short-lived goal," *i.e.*, the sale of the collateral at a reduced price, and had ceased to function at the conclusion of that sale, the alleged "association is not sufficiently continuing to constitute an 'enterprise.'" 820 F.2d at 51.

*Beck* was followed by *Furman v. Cirrito*, 828 F.2d 898, a lawsuit between the principals in a dissolved limited brokerage partnership that was alleged to have been a RICO enterprise. The plaintiffs alleged that they had been the victims of mail fraud in connection with the sale of partnership assets negotiated by the defendants. We affirmed the dismissal of the complaint. Contrasting the continuity requirements found in *Ianniello* and *Beck* with the complaint's allegation that the partnership had been dissolved, the *Furman* majority affirmed the dismissal on the ground that, even assuming that plaintiffs had "spelled out some form of criminal fraud on [defendants'] part, they have not alleged a pattern of racketeering activity conducted in the affairs of an 'enterprise'" that would have the requisite continuity. *Id.* at 902. The majority reasoned that although partnerships are expressly mentioned in the definition of enterprise, "since the effect of [defendants'] acts was to remove [the parties' partnership] from the very definition of enterprise, the requirement of continuity was not satisfied." *Id.* at 903.

In dissent, Judge Pratt criticized both the *Furman* majority opinion and the *Beck* decision as inconsistent with *Ianniello*. The dissent disagreed with the majority's

apparent view that the sale of the partnership could not be part of the conduct of the partnership's affairs, and concluded that the majority's ruling that the dissolution of the partnership eliminated the requisite continuity of enterprise had the effect of equating enterprise with racketeering activity. *Id.* at 907–08. The dissent also concluded that when *Beck* required multiple or extended goals in order to make the enterprise a continuing enterprise, it misidentified the enterprise as the activity and "undercut[ ] *Ianniello* by putting back into the RICO stew the multiple-episode ingredient that *Ianniello* sought to remove." *Id.* at 908.

In *Albany Insurance Co. v. Esses*, 831 F.2d 41 (2d Cir.1987), we affirmed the dismissal of a civil RICO complaint which, together with a proposed amendment, charged that the corporate defendant and its owner had committed arson and mail fraud in order to obtain payment of a false insurance claim. Noting that *Ianniello* had affirmed the convictions there at issue because the profit-skimming enterprise had " 'no obvious terminating goal or date,' " *id.* at 44 (quoting *Ianniello*, 808 F.2d at 192), and that *Beck* had affirmed the dismissal of a civil RICO complaint because of the enterprise's " 'straightforward, short-lived goal,' " 831 F.2d at 44 (quoting *Beck*, 820 F.2d at 51), we concluded that the *Albany* defendants did not constitute a sufficiently "continuing" enterprise because their activity "had an 'obvious terminating goal' " of inducing the insurer to pay a false insurance claim. 831 F.2d at 44.

In *United States v. Benevento*, 836 F.2d 60 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988), we affirmed a RICO conviction under § 1962(c) in which the enterprise was a corporation formed for the purpose of manufacturing and distributing narcotics, and two of the predicate acts alleged were a conspiracy to manufacture and distribute narcotics in violation of 21 U.S.C. § 846 (1982), and a conspiracy to import one of the necessary ingredients into the United States in violation of 21 U.S.C. § 963. Carmine Loiacono, the defendant thus convicted, contended that the two conspiracies

could not be deemed separate acts of racketeering activity because they were part of the single overall narcotics scheme. We disagreed. Noting that the differences between the two conspiratorial offenses meant that a defendant could be held guilty of either, neither, or both, we concluded that

> [t]he fact that Loiacono committed both crimes as part of a single plan does not invalidate the RICO conviction, since this circuit has rejected the view that a pattern of racketeering activity or a racketeering enterprise must consist of multiple ventures or plans. So long as the defendants commit at least two predicate acts, they have met the pattern requirement and, so long as the enterprise is long and elaborate enough to be considered continuing, the enterprise requirement is satisfied.

836 F.2d at 72 (citing *Beck* and *Ianniello* ).

In *Creative Bath Products, Inc. v. Connecticut General Life Insurance Co.*, 837 F.2d 561 (2d Cir.1988), we considered a complaint by two related companies and their two principals alleging that the defendants had made three misrepresentations in the sale to the companies of four insurance policies on the lives of the companies' principals. The district court had dismissed for insufficient allegation of a RICO pattern. We noted that this was "probably" error in light of *Ianniello;* but we affirmed the dismissal on the ground that the complaint failed to show the requisite continuity of enterprise:

> [P]laintiffs' case consisted of the proposition that defendants had made three fraudulent representations in pursuit of a single short-lived goal, *i.e.,* the sale to Creative Bath and its affiliated company of the four insurance policies on the lives of the two partners. That RICO claim is not distinguishable in a meaningful way from those claims whose dismissals were upheld in *Beck* and *Albany.* Accordingly, we affirm the judgment of dismissal.

*Id.* at 564.

Finally, in *Beauford v. Helmsley*, 843 F.2d 103, which was reheard *en banc* with

the present case, we affirmed the dismissal of a civil RICO complaint alleging that the defendants had committed mail fraud in connection with offering for sale 8,286 apartments that were being converted into condominiums. The alleged racketeering activity was said to be the mailing of fraudulent offering plans to the tenants of the apartments, as well as to others, and the later mailing of plan amendments to those persons. We stated that our precedents were confusing but seemed to require the conclusion that "a single alleged scheme to defraud buyers, tenants, and the authorities overseeing the laws pertaining to" the conversion is not sufficient to allege a RICO enterprise "regardless of how many fraudulent acts it entails." We concluded that the *Beauford* complaint was properly dismissed for lack of a RICO enterprise because the scheme, though "widespread," was "discrete," and, though "continuing," was "finite." *Id.* at 110.

### D. *Other Circuits' Interpretations of "Pattern" and "Enterprise"*

Other circuits have dealt with *Sedima*'s footnote 14 and the requirements of relationship and continuity in other ways. None has interpreted "enterprise" in the way we have; all have remained focused on "pattern."

The Eighth Circuit has adopted the view that a civil RICO plaintiff cannot establish a RICO pattern merely by showing that the defendant has committed a number of racketeering acts pursuant to a single scheme. Rather, he must show that the defendant has engaged in more than one scheme. *E.g., H.J. Inc. v. Northwestern Bell Telephone Co.*, 829 F.2d 648 (8th Cir.1987), *cert. granted,* — U.S. —, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988); *Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir.1986).

The Seventh Circuit has adopted a standard that requires neither multiple schemes nor a continuing enterprise but does appear to require that the predicate acts have occurred in separate transactions. In *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986), the court considered a claim that the defendants had defrauded the plaintiff investors over a period of some four years through mail fraud in connection with a loan transaction and two separate foreclosures. The court considered the acts to be part of a single grand scheme but to have sufficient continuity to constitute a RICO pattern because they were "ongoing over an identified period of time so that they [could] fairly be viewed as constituting separate transactions, *i.e.,* 'transactions "somewhat separated in time and place." ' " *Id.* at 975 (quoting *Graham v. Slaughter*, 624 F.Supp. 222, 225 (N.D.Ill. 1985) (quoting *United States v. Moeller*, 402 F.Supp. at 57)). The *Morgan* court also noted its adherence to *Lipin Enterprises v. Lee*, 803 F.2d 322, 324 (7th Cir. 1986), which had held that "multiple predicate acts" over the course of several months did not satisfy the continuity aspect of the RICO pattern requirement because the acts were in furtherance of a single scheme to acquire a single large block of stock from a single victim and hence resulted in only a single injury. *See* 804 F.2d at 976–77.

In contrast, the Eleventh Circuit ruled that a series of predicate acts related to one fraudulent scheme or criminal episode can constitute a pattern, stating that the standard of that circuit is that each act is a separate predicate act for pattern purposes if it constitutes a separate violation of federal or state law listed in § 1961(1) " 'irrespective of the circumstances under which [the acts] arose.' " *Bank of America National Trust & Savings Ass'n v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir. 1986) (quoting *United States v. Watchmaker*, 761 F.2d 1459, 1475 (11th Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 880, 88 L.Ed.2d 917 (1986)). In *Watchmaker*, the court held that three simultaneous shootings constituting attempted murders, committed in the conduct of the affairs of an enterprise whose business was crime, could constitute a RICO pattern.

A number of other circuits have proceeded without enunciating a precise test. *See, e.g., United States v. Jennings*, 842 F.2d 159, 163 (6th Cir.1988) (stating obiter that two acts charged as part of a single count of an indictment may constitute the predi-

cate acts needed to support a RICO conviction); *United States v. Licavoli,* 725 F.2d 1040, 1047 (6th Cir.) (murder and conspiracy to commit that murder may constitute the requisite predicate acts), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984); *Sun Savings & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 194 (9th Cir.1987) (series of acts that were part of single scheme constituted a RICO pattern because they posed threat of continuing activity); *Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 30–31 (1st Cir.1987) (several acts of mail and wire fraud in furtherance of a single isolated bribe (paid in three installments) did not constitute a pattern); *International Data Bank, Ltd. v. Zepkin,* 812 F.2d 149, 154–55 (4th Cir.1987) (single limited scheme found not sufficient); *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1355 (5th Cir.1985) (two related acts of mail fraud would suffice to satisfy pattern requirement). *See generally* Abrams, *Civil RICO's Cause of Action: The Landscape After* Sedima, 12 Tul.Mar.L.J. 19, 41–51 (1988).

E. *"Pattern" and "Enterprise" Revisited*

It is in this posture that today's *en banc* issue arises. This circuit, alone among all the circuits, has held that a RICO pattern of racketeering activity may be established simply by proof of two acts of racketeering activity, but that a RICO enterprise is not established unless there is proof that it is ongoing and that there is more than a single scheme having no demonstrable ending point. For the reasons below, we conclude today that proof of two acts of racketeering activity without more does not suffice to establish a RICO pattern; that the concepts of relatedness and continuity are attributes of activity, not of a RICO enterprise, and that a RICO pattern may not be established without some showing that the racketeering acts are interrelated and that there is continuity or a threat of continuity; that a pattern may be established without proof of multiple schemes, multiple episodes, or multiple transactions; and that racketeering acts that are not widely separated in time or space may nonetheless, given other evidence of the threat of continuity, constitute a RICO pattern.

■ To begin with, we note that though we disagree with the doctrinal treatment that followed, *Ianniello* correctly characterized *Sedima's* footnote 14 as dictum. The Supreme Court was not presented with an issue as to whether or not a RICO pattern had been established but only with whether RICO required (a) a prior conviction or (b) some special type of injury. The holding of the Supreme Court was that neither of these conditions was a prerequisite to recovery in a civil RICO action. Since the nature of the pattern to be shown was not then in issue, we agree with *Ianniello* that footnote 14 was dictum.

Nonetheless, the *Sedima* dictum was entitled to far greater deference than *Ianniello* gave it. Moreover, the language of the statute and the legislative history support the essential point of that dictum. There is no question that, technically, the language of the statutory definition of "pattern of racketeering activity" does not define but merely sets a minimum. That is, in contrast to certain other RICO definitions, which use the term "means," *see, e.g.,* § 1961(1), the definition of pattern "requires" at least two racketeering acts, implying, as *Sedima's* footnote observed, that while two acts are necessary, they may not be sufficient.

The legislative history supports this inference, both explicitly and implicitly. Earlier proposed definitions of pattern were more susceptible to an interpretation that two racketeering acts, without more, would suffice. As revealed in the Senate Report on S. 30, which contained RICO as enacted, an earlier bill, S. 1861, would have defined the term as follows: "The term 'pattern of racketeering activity' *includes* at least *one* act occurring after the effective date of this chapter." S.Rep. No. 617, 91st Cong., 2d Sess. 122 (1969) ("S.Rep. 617") (emphasis added). The Department of Justice, responding to a request for comments on S. 1861, proposed a modification to clarify that "[t]he term 'pattern' indicate[d] that what [was] intended to be proscribed is not a single, isolated act of 'racketeering activi-

ty,' but at least two such acts." *Id.* The new proposed definition was: "The term 'pattern of racketeering activity' *means* at least two acts, one of which occurred after the effective date of this chapter." *Id.* (emphasis added). The Senate rejected the proposed modification, however, in favor of the version enacted in § 1961(5). *See id.* at 158. Thus, the evolution of the present definition ended with the substitution of "requires at least two" for "means at least two." This history amply supported the floor statement of Senator McClellan, sponsor of S. 30, that "proof of two acts of racketeering activity, without more, does not establish a pattern." 116 Cong.Rec. 18940 (1970).

The legislative history is thus inconsistent with a rule that any two acts of racketeering activity, without more, suffice to establish a RICO pattern. Accordingly, we abandon the *Ianniello* view that two acts, without more, suffice.

We note in passing that we do not believe *Weisman* stood for the proposition that two acts of racketeering activity sufficed without more to establish a pattern. While it might have stood for that proposition if only two acts of racketeering activity had been proven, in fact at least 10 (and perhaps as many as 18) racketeering acts had been proven, and *Weisman*'s statement that any two of the proven offenses sufficed to show a pattern must be interpreted against that background. It was plain that no two of these acts could be viewed as isolated or sporadic, for there were at least eight other similar acts.

■ Further, we no longer adhere to the view of *Ianniello* and its progeny that relationship and continuity are necessary characteristics of a RICO enterprise. Neither the statutory definition of enterprise nor the legislative history suggests that those concepts pertain to the notion of enterprise. Rather, the language and the history suggest that Congress sought to define that term as broadly as possible, "includ[ing]" within it every kind of legal entity and any "group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To the extent that the legislative history discusses the concepts of relatedness and continuity, it does so in connection with proposed definitions of pattern of racketeering activity. *See* S.Rep. 617, at 158 ("The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern."); 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan: "The term 'pattern' . . . requires the showing of a relationship. . . ."). We conclude that relatedness and continuity are essentially characteristics of activity rather than of enterprise.

■ An interrelationship between acts, suggesting the existence of a pattern, may be established in a number of ways. These include proof of their temporal proximity, or common goals, or similarity of methods, or repetitions. The degree to which these factors establish a pattern may depend on the degree of proximity, or any similarities in goals or methodology, or the number of repetitions. Congress's elaboration on the concept of pattern in connection with its provision in 18 U.S.C. § 3575(e) for dangerous special offenders is instructive. As discussed in *Sedima*'s footnote 14, that section provided that criminal conduct would form a pattern if it embraced criminal acts that had, for example, "the same or similar purposes, results, participants, victims, or methods of commission." 18 U.S.C. § 3575(e) (1982), *repealed by* Sentencing Reform Act of 1984, Pub.L. No. 473, tit. II, §§ 212(a)(1) and (2), 235(a)(1), 98 Stat. 1987, 2031. Though the facts (a) that this section was part of the legislation that included RICO, and (b) that Congress did not include a similar elaboration as part of RICO, suggest that Congress did not intend the same definition to be engrafted onto RICO, these characteristics plainly are not irrelevant to proof of pattern. Though continuity and relatedness could be shown in other ways even if each of the listed similarities was lacking, we think the presence of any of these similarities could well

justify a conclusion that the acts were related. *See generally* Blakey & Gettings, *Racketeer Influenced and Corrupt Organizations (RICO): Basic Concepts—Criminal and Civil Remedies,* 53 Temp.L.Q. 1009, 1030 & nn. 97–101 (1980) ("Blakey & Gettings").

We recognize that to the extent relatedness is to be shown by the acts' temporal proximity, there may well be a tension between relatedness and continuity, for obviously the shorter the elapsed time between the two acts, the less it can be said that the activity is continuing. Nonetheless, "[i]t is important to recognize that in footnote 14 the Supreme Court does not enshrine 'continuity plus relationship' as a determinative two-pronged test. Rather, the Court quotes this language to demonstrate how the pattern requirement should be interpreted to prevent the application of RICO to the perpetrators of 'isolated' or 'sporadic' criminal acts." *Sun Savings & Loan Ass'n v. Dierdorff,* 825 F.2d at 192. Further, we note that the legislative history referred not just to continuity but also to the *threat* of continuity. Therefore, where the virtual simultaneity of two acts suggests that they are related, the timing does not negate the existence of a pattern; rather, evidence of continuity or the threat of continuity will simply have to come from facts external to those two acts.

We do not agree with those courts that have in effect concluded that temporal proximity requires that two or more acts be counted as one. While temporal separation of events is a common feature of a pattern of action, it is not an essential; such a pattern may be found, for example, in the simultaneous commission of like acts for similar purposes against a number of victims.

▮ Nor, with respect to the requirement of continuity or threat of continuity, do we see any basis in RICO or its legislative history for the proposition that a RICO violation cannot be established without proof of more than one scheme, episode, or transaction, or without proof that the scheme pursuant to which the racketeering acts were performed is a scheme with no apparent termination date. The statute defines racketeering activity in terms of criminal "acts," *see* §§ 1961(1)(A), (B), (C), and (E), or "offenses," *see* § 1961(1)(D); it similarly defines pattern in terms of "acts" of racketeering activity, *see* § 1961(5). There is no mention of schemes, episodes, or transactions. We doubt that Congress meant to exclude from the reach of RICO multiple acts of racketeering simply because they achieve their objective quickly or because they further but a single scheme. We note also that this view is consistent with our ruling in *United States v. Parness,* 503 F.2d 430. Indeed, though the *Ianniello* panel, in discussing enterprise, described the record before it as showing "fraud continuing indefinitely" with "no obvious terminating goal or date," 808 F.2d at 191–92, we regard that reference as simply a description of some of the indicia of continuity in that case rather than a suggestion that proof of a scheme of indefinite duration would be required in every case.

▮ In sum, though we would disapprove any attempt by the government or a private plaintiff to go beyond Congress's intent and fragment an act that plainly is unitary into multiple acts in order to invoke RICO, we conclude that where in fact there are a number of different acts, each should be separately counted. If there are similarities between them with respect to victim, methodology, goal, *etc.,* and if there is evidence of a threat of continuation of racketeering activity, we conclude that the acts may constitute a pattern even though they are nearly simultaneous.

▮ In some cases both the relatedness and the continuity necessary to show a RICO pattern may be proven through the nature of the RICO enterprise. For example, two racketeering acts that are not directly related to each other may nevertheless be related indirectly because each is related to the RICO enterprise. The nature of the enterprise may also serve to show the threat of continuing activity. Where the enterprise is an entity whose business is racketeering activity, an act performed in furtherance of that business

automatically carries with it the threat of continued racketeering activity. Even where the enterprise is legitimate, if the racketeering acts were performed at the behest of an organized crime group, that fact would tend to belie any notion that the racketeering acts were sporadic or isolated. We do not suggest that a defendant's association with an organized crime group is itself an act of racketeering activity, or that the defendant is to be held accountable for the racketeering acts of others. We simply note that such an association may reveal the threat of continued racketeering activity and thereby help to establish that the defendant's own acts constitute a pattern within the meaning of RICO.

■ Finally, we note that though the interrelatedness concept discussed above pertains to the predicate acts, it is plain that for establishment of a RICO violation there must also be some kind of relationship between the acts and the enterprise, for each of the substantive RICO subsections prohibits a specific type of interplay between a pattern of racketeering activity and the enterprise. Section 1962(a) prohibits use of income derived from a pattern of racketeering activity for the establishment of, or acquisition of an interest in, an enterprise engaged in or affecting interstate or foreign commerce. Section 1962(b) prohibits use of a pattern of racketeering activity to acquire an interest in, or control of, such an enterprise. And § 1962(c) prohibits use of a pattern of racketeering activity in the conduct of such an enterprise's affairs. Thus, no RICO violation can be shown unless there is proof of the specified relationship between the racketeering acts and the RICO enterprise. To the extent, therefore, that the relationship between acts necessary to establish a pattern depends on the relationships between individual acts and the enterprise, there will often be some overlap of proof and analysis. The degree of overlap will vary depending in part on the substantive RICO subsection at issue. The establishment of a subsection (a) violation, for example, will likely entail less overlap, since the acts by which the tainted income is acquired need have no logical relationship to the enterprise in which in-

vestment will thereafter be made. In contrast, establishment of a subsection (c) violation will often entail overlap, for each act of racketeering activity will be related to the enterprise since the latter's affairs are by hypothesis conducted through a pattern of such acts. The differences and overlap are simply a consequence of Congress's use of the same defined terms in fashioning different substantive prohibitions.

■ This is not to say that one should ever view the enterprise and the pattern as the same thing, for they are not. "[T]he concept 'enterprise' focuses on a group of people; .... The concept 'pattern' focuses on the relationship between acts of racketeering...." Blakey & Gettings at 1026 n. 91. But the difference in the nature of the two elements does not mean that the same piece of evidence may not help to establish both. *See Turkette*, 452 U.S. at 583, 101 S.Ct. at 2528–29 ("the proof used to establish these separate elements may in particular cases coalesce"); *Moss v. Morgan Stanley*, 719 F.2d at 22–23; *United States v. Mazzei*, 700 F.2d at 89–90. We conclude that evidence of the nature of the enterprise may be used to show the threat of continuity sufficient to establish a RICO pattern.

F. *Application of These Principles to Indelicato*

■ Under these standards, we have little difficulty in concluding that Indelicato's participation in the three Bonanno family murders as a representative of the Commission constituted a pattern of racketeering activity within the meaning of RICO. There were three persons targeted for assassination. Though the murders were virtually simultaneous, they plainly constituted more than one act. Further, the three murders were indisputably related since the purpose for each was facilitation of the desired change in leadership of the Bonanno crime family. Though the murders themselves were quickly completed, both the nature of the Commission, which was the alleged RICO enterprise, and the criminal nature of the Bonanno family, control of which the murders were designed to

achieve, made it clear beyond peradventure that there was a threat of continuing racketeering activity. The evidence was plainly ample to permit the jury to infer that the murders were part of a RICO pattern.

## CONCLUSION

We conclude that the nearly simultaneous murders of three persons as part of the conduct of the affairs of an organized crime enterprise constituted a "pattern of racketeering activity" within the meaning of § 1961(5). We remand the matter to the panel for further proceedings consistent with this ruling.

OAKES, Circuit Judge (concurring) (with whom Judge Feinberg joins):

I concur in Judge Kearse's opinion and her analysis of RICO's "pattern" requirement. I write separately because it is important to emphasize that Indelicato's "pattern" of racketeering activity did not consist solely of the three murders at Joe & Mary's Restaurant on July 12, 1979. Proof of these murders was necessary but not sufficient to prove a RICO pattern of racketeering activity. This is a case where evidence concerning the nature of the RICO enterprise also served to prove the existence of a pattern of racketeering activity. Facts external to the predicate acts— the three murders—were essential to prove relatedness and the threat of continuity.

This was the quintessential racketeering case. The indictment, the proof, and the trial judge's charge demonstrate that Indelicato was not an "independent contractor" called upon to commit an isolated crime. On the contrary, he was associated for some years with the ultimate criminal enterprise, the Commission of La Cosa Nostra. Indelicato committed murders which were critical to the enterprise's achieving its goal of resolving Family leadership disputes; these were not "isolated acts of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985).

The indictment further charged that one of the purposes of the Commission enterprise was to "extend[ ] formal recognition to newly-elected Bosses of La Cosa Nostra Families, and [to] resolv[e] leadership disputes within a Family," as well as to "keep[ ] persons inside and outside La Cosa Nostra in fear of the Commission by identifying the Commission with threats, violence, and murder." Among the means used by the Commission to advance these general purposes was the resolution of "a leadership dispute within the Bonanno Family ... by authorizing the murders of Carmine Galante, a/k/a 'Lilo,' who was Boss of the Bonanno Family, and Leonard Coppola and Giuseppe Turano." Thus, the indictment charged that there was an important connection between Indelicato's conduct and the overall, common purposes of the racketeering enterprise. The murders were part of a larger plan, a reorganization or realignment of the Bonanno Family by the Commission.

The evidence was that in 1979, Indelicato was a formally inducted Soldier in the Bonanno Family, a Family that, because of its many factional disputes, was managed directly by the Commission. As a "made" member, Indelicato necessarily learned the Mafia rules set down by the Commission and took the oath to abide by those rules and to obey the Commission. Indelicato knew of the exclusively criminal purposes of the Commission and knew it had been engaging in, and that it would continue to engage in, racketeering activity.

Indelicato was chosen to carry out a murder plan so important that the Commission itself had the exclusive power to authorize it—namely, the assassination of the Boss of a La Cosa Nostra Family. Indelicato's conspiracy with the Commission to murder the three involved planning which continued over a significant time period, beginning in June 1979, when the getaway car eventually used in the killing was stolen. There was evidence that a few days before July 12, Louis Giongetti—an associate of Indelicato—was instructed to collect a cache of shotguns and handguns and place them in the trunk of a car, and to return with them to a bar where Indelicato and another Mafioso were waiting. Indelicato was promoted to captain in the Bonanno Family as a reward for the killings.

The district judge correctly instructed the jury on the elements of the RICO substantive offense. He used language specifically approved as embodying the "observations in footnote 14" of *Sedima, United States v. Teitler*, 802 F.2d 606, 612 (2d Cir.1986), when he described the "pattern" requirement for the jury:

> Whether you are considering a pattern of loansharking, extortion, labor law violations or acts of murder, ... when you are considering whether they form a pattern as to any defendant, you must find that the defendant's acts are not isolated or disconnected. You must find that they are related or connected by some common scheme, plan, or motive. Thus you must find that the acts constituted *part of a larger pattern of activity* that characterized the defendant's participation in the affairs of the enterprise and you must consider and find whether or not there is a continuity plus relationship in the acts as to the defendant you are considering.

(Emphasis added.)

Thus, the jury was instructed that it could convict Indelicato only if it found his acts to be integrally related to the larger pattern of the enterprise's activities, and not merely isolated or sporadic. The criminal nature of the enterprise involved in this case provides the continuity or threat of continuity necessary to establish a pattern. I believe that this is implicit in the majority opinion; accordingly, I concur.

MAHONEY, Circuit Judge (concurring):

I am in general agreement with Judge Kearse's excellent opinion, and write separately only to state my disagreement with its assertion that "the concepts of relatedness and continuity are attributes of activity, not of a RICO enterprise....," a point reiterated in several variations in the majority opinion.

The Supreme Court stated in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), that:

> The [enterprise] is proved by evidence of an *ongoing organization*, formal or informal, and by evidence that the associates *function as a continuing unit*.

*Id.* at 583, 101 S.Ct. at 2528 (emphasis added). It would thus appear clear that continuity is an attribute of a RICO enterprise, as well as a RICO pattern. As to relatedness, there will presumably be a relationship (1) between the associates that function as a continuing unit, and (2) between the associates and the unit.

The majority's essential point is that the discussion of relatedness and continuity in *Sedima* footnote 14 refers to the RICO pattern rather than the RICO enterprise. I agree, and think that is what we should say.