**Otto KUCZYNSKI, Horst Kuczynski, Roland Kuczynski, Kurt Kuczynski, Thomas L. Foreman, Mildred E. Foreman, and Thomas L. Foreman, Jr., Plaintiffs,**

v.

**RAGEN CORPORATION and Ira L. Lopata, Defendants.**

**No. 86 Civ. 7194 (SWK).**

United States District Court, S.D. New York.

Nov. 20, 1989.

Miller & Wrubel P.C., New York City by Joel M. Miller, Charles R. Jacob, III, and Thomas J. Luz, for plaintiffs.

Berlack, Israels & Lieberman, New York City by Steven Greenbaum and Melissa M. Johnson, for defendants.

KRAM, District Judge.

This action is for damages for alleged violations of federal securities law. Plaintiffs initially asserted claims for violation of § 10 b of the Securities Exchange Act of 1934, common law fraud, and breach of the corporate duties of loyalty and due care. By an opinion of April 17, 1989, this Court denied defendants' motion for summary judgment based on the original and first amended complaints. *Kuczynski v. Ragen Corp.*, No. 86–7194 (SWK), slip op. (S.D. N.Y. April 17, 1989). Familiarity with that opinion is assumed. Plaintiffs subsequently amended their complaint twice, most recently to include alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* Presently before this Court are defendants' motions for dismissal of plaintiffs' second amended complaint and Rule 11 sanctions.

## BACKGROUND

Defendant Ragen Corporation manufactures precision machine components and assembles electronic parts. Ragen's electronic image processing business was conducted by Ragen Information Systems, Inc. ("RIS"), a wholly-owned subsidiary. The primary product manufactured by this division was the Ragen 1010 Information Management System ("1010"). Defendant Lopata was at all relevant times chairman of the board and chief executive officer of Ragen and RIS.

The plaintiffs are seven individual investors who began purchasing Ragen stock in 1981 after learning about the 1010 and the potential profit it could earn for the company. Plaintiffs' decision to purchase the stock was based on information from their stockbroker, Ragen's annual reports and press releases. By 1986 plaintiffs had invested a total of over $1,100,000 to acquire 232,440 shares of Ragen stock.

Although defendant corporation made optimistic statements about the 1010 in its annual report, press releases and presentations to the financial community, the product never realized its potential, partly due to Ragen's inability to adapt the product from its original government use to general commercial use. However, plaintiffs reportedly were encouraged by Ragen's press announcement and Form 8–K report

in April 1986 that RIS had entered into a contract with Wang Laboratories, a major computer manufacturer, to supply Wang with 1010 image processing equipment. Nevertheless, the 1010 never yielded an operating profit during the period Ragen produced it, between 1979 and 1986.

Three months after the announcement of the Wang contract, on July 25, 1986, Ragen announced that it had agreed to sell RIS to a group of private investors which formed Imnet Corporation. Ragen received $3,000,000 in cash and $4,000,000 in convertible preferred stock. The sale was consummated on September 30, 1986 and plaintiffs commenced this suit shortly thereafter.

The most recent amended complaint, filed on April 28, 1989 by leave of this Court, adds RICO allegations based on the above facts. The RICO claims allege a pattern of securities and mail fraud over a period of six years. Presently before this Court is defendants' motion for dismissal of the RICO claims pursuant to Rules 15(a), 9(b), and 12(b)(6) and for sanctions under Rule 11.

## DISCUSSION

### I. Leave to Amend Under Rule 15(a)

Plaintiffs' Second Amended Complaint, containing seventeen alleged predicate acts of racketeering over three time periods between 1980 and 1986, was brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO"). Defendants have moved under Fed.R.Civ.P. 15(a) to dismiss the RICO claims in the Second Amended Complaint. Defendants oppose the addition of these claims on the grounds that it would prejudice their defense of this action. For the reasons discussed below defendants' motion is denied.

Defendants particularly object to the inclusion in the Second Amended Complaint (hereinafter "SAC") of 14 separate allegations for the period between 1980 and 1983 pertaining to statements made by defendants Ragen and Lopata about the 1010. Defendants contend that this newly-amended complaint contains new material not contained in any of plaintiffs' prior pleadings, and that because discovery has ended, plaintiffs should not be able to add these RICO claims. Defendants claim that the RICO allegations require extensive (and expensive) additional discovery, including new depositions of plaintiffs and non-parties. Defendants' Memorandum in Support of their Motion to Dismiss at 12; Affidavit of Melissa M. Johnson in Support of Defendants' Motion to Dismiss ¶¶ 2–32.

■ Rule 15(a) states that "leave to amend shall be freely given when justice so requires." See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Whether to grant leave amend is within the sound discretion of the district court. Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). Leave to amend should be allowed particularly where "the amended claim was obviously one of the objects of discovery and related closely to the original claim." Tokio Marine and Fire Ins. Co. v. Employers Ins. of Wausau, 786 F.2d 101, 103 (2d Cir.1986) (quoting State Teachers Retirement Board v. Fluor Corp., 654 F.2d 843, 856 (2d Cir.1981)).

■ On the other hand, pleadings may not be amended to add an entirely new set of operative facts if the original complaint did not provide fair notice to the defendant or if the new pleading will unduly burden or prejudice the defendants' case. Zenith Radio v. Hazeltine Research, supra, 401 U.S. at 330–331, 91 S.Ct. at 802–803; Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir.1985).

■ The allegations contained in the most recent complaint are very similar to those contained in the earlier ones. The essential elements of plaintiffs' complaints remain. They allege that defendants made fraudulent, overly optimistic statements about the 1010; that they attempted to demonstrate capabilities of the 1010 that did not exist; that they misrepresented a sales agreement with Wang Laboratories as a formalized joint marketing venture and secretly conducted negotiations to sell

the 1010 while publicly pledging to actively market it. *Compare* First Amended Complaint ¶¶ 9, 11, 14–15, 26, *with* Second Amended Complaint ¶¶ 13a–13n, 23, 26a–b. *See also Kuczynski, supra,* slip op. at 4–6.

Defense counsel's objections that the new complaint contains "innumerable new factual allegations" forcing them "to basically redo all discovery" [sic] are unpersuasive. Affidavit of Melissa M. Johnson at ¶ 11. Most of these putatively new allegations merely reformulate the old factual allegations in a way that will state a RICO claim. To the extent that plaintiffs have added new pejorative descriptions to their claims (e.g., "outright lies," *id.* at ¶ 6; "falsely" stated, *id.* at ¶ 15), these epithets hardly require a complete revamping of defendants' discovery.

This Court has already found that there is evidence to go to trial on issues of defendants' misrepresentations. In its previous opinion the Court found that, for example, plaintiffs could support a claim that defendants had publicized that "manufacturing status of the 1010 Information management System had been attained." *Kuczynski, supra,* slip op. at 5 (quoting Ragen 1980 Annual Report).[1] The new complaint contains more detailed information about how Ragen publicized and marketed the 1010 system, but the essential facts which now form the basis for the new RICO claims are "closely related" to those contained in the earlier complaints. The Court initially gave plaintiffs leave to amend at a pre-motion conference required by this Court. The Court originally allowed the amendment because plaintiffs represented that the added claims would be based on the same facts. Nothing in the briefs has since convinced the Court otherwise. Therefore, the new RICO claim does not deprive defendants of fair notice or prejudice their case.

Defendants cite *In re Olympia Brewing Co. Securities Litigation,* No. 77 C 1206, slip op., 1984 WL 2140 (N.D.Ill. Dec. 18, 1984) (LEXIS, Genfed Library, Dist. file) for the proposition that RICO claims cannot be added late in the litigation even if no new facts are added. That case may be distinguished from the one at bar. *Olympia* was a highly complex group of securities fraud cases involving numerous plaintiffs and defendants that was consolidated for trial. The amended complaints containing the RICO allegations were filed five years after the original complaints were filed and were much more complex than the original complaint. Despite representations to the contrary that the RICO claim would be based on the same factual bases as those set forth in previous complaints, the plaintiffs added new defendants as well as new claims. The allegations were "conclusory and overcomplicated," *id.,* 1984 WL 2140, slip op., Lexis at 7, requiring a great deal of additional discovery. The claims pursuant to § 1962(c) involved "literally hundreds of possible enterprises," *id.* 1984 WL 2140, Lexis at 8, and intricate questions of proof. *Id.* 1984 WL 2140, Lexis at 7.

The circumstances in the present case are different from *Olympia Brewing.* Plaintiffs' most recent complaint is not substantially more complex than its predecessors. It is based on the same factual allegations as the others. No new defendants have been added. While defendants will need to prepare for the possibility of treble damages and attorney's fees, additional damages exposure does not affect the substance of their case.

This Court is well aware that civil RICO is a powerful tool that can be overused.

---

1. In its prior summary judgment opinion, this Court said that plaintiffs' complaint presented triable issues, and gave examples of four alleged misstatements. *See Kuczynski v. Ragen, supra,* slip op. at 5–6, 10. Defendants mistakenly interpret the Court's holding to mean that triable issues were raised by only four of the claimed misrepresentations. Defendants' Memorandum at 7. The Court cited these merely as examples of defendants' alleged misrepresentations, not as a comprehensive list of the trial-worthy claims. The four examples given by the Court were: statements made by Ragen Corp. in its 1980 annual report and September 23, 1985 press release, and by Lopata at a May 1983 meeting of the New York Society of Security Analysts and at a meeting with plaintiffs Otto Kuczynski and Thomas Foreman on August 23, 1983.

Nonetheless, each motion to add RICO claims must be looked at individually for a determination of whether the complaint can be amended without unduly prejudicing or burdening defendants. In the present matter these conditions have been met. The motion to dismiss the RICO claims on 15(a) grounds is denied.

Because the RICO claims arise out of the same conduct as alleged in the original pleadings, the amendment relates back to the date of the original pleading. *See,* Fed. R.Civ.P. 15(c). Based on defendants' contentions that plaintiffs' RICO claims are grounded in entirely new facts, they have argued that the RICO claims would be barred by civil RICO's four-year statute of limitations. *Bankers Trust Co. v. Rhodes,* 859 F.2d 1096, 1102–03 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). However, in light of this Court's ruling that the RICO claims are based on the same factual allegations as their prior claims, defendants' time-bar argument must be rejected.

## II. Pleading with Particularity Under Rule 9(b)

■■ RICO claims must be pleaded with particularity as required by the Federal Rules of Civil Procedure 9(b). *See, Zucker v. Katz,* 708 F.Supp. 525, 531 (S.D. N.Y.1989) (Kram, J.); *Construction Technology v. Lockformer Co., Inc.,* 704 F.Supp. 1212, 1230–31 (S.D.N.Y.1989); *Anitora Travel, Inc. v. Lapian,* 677 F.Supp. 209, 214 (S.D.N.Y.1988). The 9(b) requirement serves to: (1) give defendants fair notice of plaintiffs' claims; (2) assist drafting of responsive pleadings; (3) protect defendants' reputations and good will from frivolous or baseless claims; and (4) minimize the number of strike suits. *Beres v. Thomson McKinnon,* No. 85–6674 (S.D. N.Y. September 1, 1989) (Kram, J.), slip op. at 16 (WESTLAW, Allfeds library, Dist file, 1989 WL 105967 (citing *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Decker v. Massey Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir. 1982) (other citations omitted.))

■■ Generally, allegations of fraud based only upon "information and belief" violate the rule that 9(b) pleadings be pleaded with particularity. *Id.* (citing *Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir. 1986); *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974, *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975)). If the allegation involves scienter, or "matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of facts upon which the belief is founded." *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972).

■■ Allegations based on information and belief which fail to specify the time, place, speaker and content of the alleged misrepresentations lack the "particulars" required by Rule 9(b). *Luce, supra,* 802 F.2d at 54; *see Denny v. Barber,* 576 F.2d 465, 469 (2d Cir.1978); *Zerman v. Ball,* 735 F.2d 15, 22 (2d Cir.1984); *Segal, supra,* 467 F.2d at 608. Failure to connect allegations of fraudulent representation to particular defendants and to allege specific facts to support the claims of fraud is sufficient grounds for dismissal. *Luce, supra,* 802 F.2d at 54.

■■ To satisfy the Rule 9(b) requirements in the Second Circuit, plaintiffs must specify:

1) precisely what statements were made in what documents or oral misrepresentations or what omissions were . made, 2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, 3) the context of such statements and the manner in which they misled the plaintiffs, and 4) what defendants obtained as a consequence of the fraud.

*Beres, supra,* slip op. at 18 (citing *Barr v. McGraw–Hill, Inc.,* [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶¶ 94,382 at 92,498 (S.D.N.Y. April 7, 1989); and quoting *Todd v. Oppenheimer & Co., Inc.,* 78 F.R.D. 415, 420–421 (S.D.N.Y.1978)). This Court finds that in the present case, plain-

tiffs' RICO allegations satisfy these four requirements.

█ Defendants argue that plaintiffs' most recent complaint is fatally flawed because it does not allege a specific violation of § 1962 of RICO. If the complaint fails to cite a specific section of RICO but otherwise properly pleads fraud with particularity, this Court may infer which section of RICO is implicated. *Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986).[2]

█ Plaintiffs have alleged adequately detailed information regarding defendants' written and oral misrepresentations. The complaint lists 14 separate incidents of misrepresentation for the period between 1980 and 1983, a meeting in August 1983, and several more incidents from 1983 to 1986 when positive statements were made by the company about the 1010 product. SAC ¶¶ 12–27. For example, the complaint states that the Ragen annual reports for the years 1981, 1982, 1983, 1984 and a press release dated June 15, 1982 all falsely represented that the 1010 could replace data processors, word processors, copiers, printers, "fax" machines, and tape and microfiche storage facilities. SAC ¶ 13c. In addition, plaintiffs allege that Ragen's business plan, press releases, announcements, and news articles published during this time period contained inflated sales projections of the 1010. For example, a five-year business plan circulated to the financial community in 1983 claimed that annual sales of the 1010 were expected to range from $10.3 million in 1983 to $73.6 million in 1987. SAC ¶ 13e. Actual 1983 sales were allegedly $2.4 million. SAC ¶ 13k.

The complaint also specifies the dates and places of defendant Lopata's allegedly misleading statements. SAC ¶¶ 13g–*l*; 15–19. These include a meeting of the New York Society of Security Analysts on May 10, 1983, at which Lopata first claimed that

the company expected sales of the 1010 in fiscal year 1983 to be between $4 and 5 million. SAC ¶ 13k. Lopata then reportedly revised the sales estimate in a transcript of those proceedings to between $6 and $8 million. SAC ¶ 13*l*. As noted in this Court's earlier opinion, defendants do not dispute that Lopata's remarks were a misstatement. *Kuczynski, supra,* slip op. at 6. The complaint also contains a detailed report of a meeting on August 23, 1983 between two of the plaintiffs and defendant Lopata where Lopata allegedly made false statements regarding the capability of the 1010 and the prospects for Ragen's stock. SAC ¶¶ 15–19.

Plaintiffs also claim that Ragen misrepresented in a press release dated September 23, 1985 that the sale of one component of the 1010, the storage and retrieval unit, to Wang Laboratories could lead to a "substantial sales agreement" in the future. SAC ¶ 21. Defendants allegedly were negotiating to sell the 1010 systems "in volume" to Wang. SAC ¶ 22. Plaintiffs contend that the announcement of a draft "Joint Marketing Agreement" with Wang on September 23, 1985 expressly disclaimed being a joint marketing agreement. SAC ¶ 23. Further, plaintiffs contend that defendants omitted informing stockholders about Ragen's private negotiations to sell the 1010 line to an investor group while simultaneously publishing optimistic statements about the Wang developments. SAC ¶ 24. These "optimistic statements" include a press release and a Form 8–K filed with the SEC about April 24, 1986, stating that Ragen and Wang had entered into an "original equipment manufacturer" (OEM) agreement. Plaintiffs maintain that this agreement merely formalized an already-existing arrangement and would not have substantially benefited Ragen further. Plaintiffs further contend that by this time Ragen was already negotiating to sell the RIS division. SAC ¶¶ 26a, 26b. Finally, plaintiffs allege that the 1010 was not worth the $25 per share defendants had

---

**2.** Plaintiffs have agreed to stipulate that defendants are alleged to have violated 18 U.S.C. § 1962(c). Plaintiffs' Memorandum of Law in

Opposition to Defendants' Motion to Dismiss at 25.

estimated but $0.69 per share (as evidenced by the sale of the 1010 in 1986). SAC ¶ 35.

All of these claims by the plaintiffs indicate the source, time and place of the alleged misrepresentations, and therefore satisfy the first two elements of the Second Circuit's 9(b) test.

Moreover, as a result of defendants' alleged misrepresentations, omissions and false statements, plaintiffs claim they were persuaded to invest a substantial amount of capital in defendant Ragen Corporation, leading to the loss of at least $1,000,000. SAC ¶ 37. Plaintiffs' putative loss of investment funds, coupled with defendants' allegedly wrongful gain of that $1,000,000 in capital, fulfill the third and fourth elements of the 9(b) test. Plaintiffs' added allegations of RICO fraud are pleaded with sufficient particularity and survive defendants' 9(b) challenge.

### III. Motion to Dismiss the RICO Claims Pursuant to R. 12(b)(6)

Defendants have also moved to dismiss the Second Amended Complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). On a motion to dismiss, the complaint must be read generously and every favorable inference drawn in favor of the plaintiff. *Pross v. Katz*, 784 F.2d 455, 457 (2d Cir.1986); *Metzner v. D.H. Blair*, 663 F.Supp. 716, 719 (S.D.N.Y.1987). The complaint should be dismissed only if it "appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stone v. Chung Pei Chemical Industry Co., Ltd.*, 790 F.2d 20, 22 (2d Cir.1986). Section 1962(c) of RICO makes it unlawful

> for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 U.S.C. § 1962(c). Section 1961 defines the terms "racketeering activity," "pattern of racketeering activity," and "enterprise" as follows:

> (1) "racketeering activity" means ...
>
>     \*     \*     \*     \*     \*     \*
>
> (B) any act which is indictable under ... section 1341 (relating to mail fraud);
>
>     \*     \*     \*     \*     \*     \*
>
> (D) any offense involving fraud in the sale of securities.
>
>     \*     \*     \*     \*     \*     \*
>
> (3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;
>
> (4) "enterprise" includes any individual, partnership, corporation, association or other legal entity ...
>
> (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after ... [Oct. 15, 1970] and the last of which occurred within ten years, ... after the commission of a prior act of racketeering activity.

*Id.* A private cause of action is provided for a person injured in his business or property by reason of a RICO violation. *Id.* § 1964(c).

To establish a RICO claim under § 1962(c), a plaintiff must "plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) that has caused injury to plaintiff's business or property." *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Defendant's motion to dismiss must also be considered in light of the Second Circuit's most recent pronouncements on RICO. *See, United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989), and *Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir.) (en banc), vacated for further consideration in light of *H.J. Inc. v. Northwestern Bell Tel.*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), 109 S.Ct. 3236 (1989), *upheld* 893 F.2d 1433 (1989) *petition for cert. filed*, 1989 WL 121001, (U.S. Oct. 10, 1989) (No. 89–572) In these cases, the Second Circuit shifted its emphasis from "relatedness" and "continuity" of the "enterprise" element to the "pattern" element.

To survive a motion to dismiss after *Beauford* and *Indelicato*, a RICO complaint "need only plead a basis from which it could be inferred that the acts of racketeering activity were neither isolated nor sporadic." *Beauford, supra,* 865 F.2d at 1391. In that case, the complaint set forth sufficient allegations that a plan to convert part of a large apartment complex to condominiums would include fraudulent mailings over a period of years. The Court held that such acts that were not isolated or sporadic as a matter of law. *Indelicato* indicated that even racketeering acts that do not constitute multiple episodes and are not widely separated in time and space may, in the presence of other evidence of the threat of continuity, constitute a RICO pattern. *Indelicato, supra,* 865 F.2d at 1381. There, three murders committed nearly simultaneously qualified as a pattern of racketeering because of sufficient similarity and threat of the continuation of racketeering activity by the criminal organization involved.

Prior to these cases, a pattern could be alleged in the Second Circuit merely by pleading two or more predicate acts related to a RICO enterprise. *Indelicato, supra,* 865 F.2d at 1377 (citing *United States v. Ianniello,* 808 F.2d 184, 190 (2d Cir.1986), *cert. denied,* 483 U.S. 1006, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987)). However, the "continuity plus relationship" requirement enunciated in *Sedima S.P.R.L. v. Imrex Co., supra,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14, had to be satisfied by the allegation of the existence of an ongoing enterprise through which the predicate acts of racketeering were conducted. *See Indelicato, supra,* 865 F.2d at 1378–80 (summarizing earlier Second Circuit cases). *See also Beres, supra,* slip op. at 32 and *Richardson Greenshields Securities v. Mui-Hin Lau,* 693 F.Supp. 1445, 1449–50 (S.D. N.Y.1988) (Kram, J.).

■■■■ The *Beauford* and *Indelicato* decisions now require the Court to determine whether there are two or more acts that have "sufficient interrelationship and whether there is sufficient threat of continuity to constitute such a pattern." *Beau-*

*ford, supra,* 865 F.2d at 1391. Therefore, "to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc., supra,* 109 S.Ct. at 2900. (emphasis in original). Continuity may refer either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *Id.* at 2902. In the present case, plaintiffs can demonstrate with their 17 specific allegations of misrepresentation that there were numerous acts over a six-year period which were not isolated or sporadic. A RICO pattern may be shown with proof of only one scheme. *H.J. Inc., supra,* 109 S.Ct. at 2901; *Indelicato, supra,* 865 F.2d at 1381–1384. Thus the multiple acts of racketeering activity alleged to have occurred in this case through numerous misrepresentations and omissions in furtherance of a scheme to defraud investors qualifies as a "pattern of racketeering activity" under the statute.

a. Relatedness and continuity

The annual reports and frequent press releases published by Ragen about the 1010, the marketing agreement with Wang and Lopata's speeches and meeting with plaintiffs could be interpreted by a reasonable trier of fact as a misleading attempt to bolster the image of the 1010 product and the confidence of investors. All of these alleged frauds were geared toward the goal of maximizing the value of Ragen's stock. The element of continuity is provided in this case by these frequent marketing efforts which allegedly concealed the real problems Ragen was having with the 1010. According to plaintiffs, when it became apparent to Ragen that the 1010 would not achieve its potential, defendants changed strategy and entered into secret negotiations to sell the division which manufactured the 1010. Defendants' actions were interrelated by virtue of their common goal and effect on numerous shareholders, whose capital investment declined precipitously in value. In such a situation, " 'the simultaneous commission of like acts for

similar purposes against a number of victims' may constitute a pattern." *Beauford, supra,* 865 F.2d at 1392 (quoting *Indelicato,* 865 F.2d at 1383). Therefore, the Second Amended Complaint properly pleads the relatedness and continuity elements of RICO.

### b. Enterprise

■■■ Defendants also contend that plaintiffs have failed to allege the existence of an enterprise as required by 18 U.S.C. § 1961(4) since plaintiffs allege that defendants Lopata, RIS and Ragen Corp., in association with each other, constituted the RICO enterprise. SAC ¶¶ 46–47. This Court disagrees. An enterprise is defined generally as a group of persons associated together for the common purpose of engaging in a course of conduct. *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981) ("evidence of an ongoing organization, the associates of which function as a continuing unit, suffices to prove an enterprise."). The RICO statute defines "enterprise" as broadly as possible to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). *See Indelicato, supra,* 865 F.2d at 1382.

The Second Circuit has held in the past that the RICO "person" and "enterprise" must be different persons or entities. *Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 639 F.Supp 1391 (S.D.N.Y.1986); *Bingham v. Zolt,* 683 F.Supp. 965 (S.D.N.Y.1988). However, in several recent decisions the Second Circuit has expanded its view of enterprise, holding that "where the overlap between the defendants and the alleged RICO enterprise is only partial a RICO claim may be sustained." *Jacobson v. Cooper,* 882 F.2d 717 (2d Cir.1989) (citing *Cullen v. Margiotta,* 811 F.2d 698, 730 (2d Cir.) *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987)). In *Margiotta,* the Court noted that a defendant may be "a RICO person and one of a number of members of the RICO 'enterprise.'" *Id.* at 730. This Court has said on other occasions that it is possible for a corporation and one or more of its employees to associate together so that they form a RICO enterprise. *Richardson Greenshields Securities, Inc. v. Mui–Hin Lau, supra,* 693 F.Supp. at 1449 n. 6 (citing *Metzner v. D.H. Blair,* 663 F.Supp. 716, 722 (S.D.N.Y.1987) (Weinfeld, J.)).[3] Here, the complaint alleges that the Ragen Corporation and its chief executive officer associated together to form a RICO enterprise. Therefore, the enterprise element is properly pleaded.

### IV. Rule 11 Sanctions

Defendants also move for Rule 11 sanctions under Fed.R.Civ.P. 11, arguing that the Second Amended Complaint has no valid basis to add RICO claims and that it has caused defendant needless delay and increased the cost of litigation.

Our Circuit has articulated the standard for Rule 11 sanctions: "[W]here it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated." *Eastway Construction Corp. v. The City of New York,* 762 F.2d 243, 254 (2d Cir.1985). In view of this Court's finding of legitimate RICO claims, it is obvious that plaintiffs' claims might have a chance to succeed. *See Kuczynski, supra,* slip op. at 12. Rule 11 sanctions are therefore inappropriate.

### CONCLUSION

This Court denies defendants' motion to dismiss plaintiffs' RICO claims under

---

**3.** As noted above, *Beauford* and *Indelicato* continued this trend by shifting the emphasis of RICO analysis from enterprise to pattern. In addition, the *Beauford* Court specifically stated that when there is no indication that the enterprise involved is related to organized crime, the court will look to factors other than the enterprise itself for proof of continuity or the threat of continuity. *Beauford, supra,* 865 F.2d at 1391.

388

Rules 15(a), 9(b) and 12(b)(6). This Court also denies defendants' motion for sanctions under Rule 11.

SO ORDERED.