In re CRAZY EDDIE SECURITIES LITIGATION.

Vivian G. BERNSTEIN, as custodian for Jamie A. Bernstein, Karen Kaun, John Papastamatakis, Jerry Krim, Barnett Stepak, Lawrence Lyons, James R. Schwebel, Jeffrey Abrams, Stanley Heineman, and James T. Cain, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Eddie ANTAR, Sam Antar, Mitchell Antar, Eddy Antar, Solomon E. Antar, Sam E. Antar, Allen Antar, Eddie Gindi, David V. Panoff, Isaac Kairey, Kathleen Morin, Steve Pasquariello, William H. Saltzman, James H. Scott, Jr., Edmond Levy, Carl G. Zimel, Abraham Grinberg, Arnold Spindler, David Neiderbach, Jean Cocchiara, Rose Antar, Deborah Rosen Antar, Lillian Rosen, Benjamin Kuszer, Ellen Kuszer, Lillian Rosen, Sasson Cohen, Jacob Tambor, Zazy International Corp., Leonard Rubin, Richard Portnoy, Wren Distributing Co., Gary Perlmutter, Mark Halperin, J. Liebman & Co., Penn & Horowitz and Peat Marwick Main & Co., Defendants.

and

Adam Kuszer, Sam Kuszer, Simon Kuszer, Rose M. Antar, Sam M. Antar, Sam A. Antar, Michelle Antar, Rori Antar, Gabrielle Antar, Danielle Antar, Simone Antar, Nicole Antar, and Noelle Antar, Nominal Defendants.

Nos. 87 C 33, 88 C 3481 and 91 C 4450.

United States District Court,
E.D. New York.

May 1, 1992.

Sirota & Sirota (Howard B. Sirota, of counsel), New York City, for plaintiffs.

Milberg, Weiss, Bershad, Specthrie & Lerach (David J. Bershad, Michael C. Spencer, of counsel), Abbey & Ellis (Arthur Abbey, of counsel), New York City, for plaintiff John Papastamatakis.

Pomerantz, Levy, Haudek, Block & Grossman (Mark I. Gross, of counsel), New York City, for plaintiff Jeffrey Abrams.

Stull, Stull & Brody (Jules Brody, of counsel), New York City, for plaintiff Vivian G. Bernstein.

Lowey, Dannenberg, Bemporad, Brachtl & Selinger, P.C. (Richard Bemporad, of counsel), New York City, for plaintiff James T. Cain.

Kaufman, Malchman, Kaufman & Kirby (Irving Malchman, of counsel), New York City, for plaintiff Stanley Heineman.

Law Offices of Harvey Greenfield (Harvey Greenfield, of counsel), New York City, for plaintiffs Jerry Krim and Barnett Stepak.

Christopher Lovell, P.C., New York City, for plaintiff Larry Lyons.

Law Offices of Joseph H. Weiss, New York City, for plaintiff James R. Schwebel.

Milbank Tweed Hadley & McCloy (C. Stephen Howard, Los Angeles, Cal., Susanne Toes, New York City, of counsel), for plaintiff Oppenheimer–Palmieri Fund Ltd.

Tuttle & Taylor, Los Angeles, Cal., for plaintiffs Elias Zinn, Victor Palmieri, and Entertainment Marketing, Inc.

Folkenflik & McGerity (Max Folkenflik, of counsel), New York City, for plaintiffs

Entertainment Marketing Inc. and Elias Zinn.

Shearman & Sterling (Joseph McLaughlin, of counsel), New York City, for defendants Peat Marwick Main & Co. and KMG Main Hurdman.

Kaye, Scholer, Fierman, Hays & Handler (Steven Glassman, of counsel), New York City, for defendant Oppenheimer & Co., Inc.

Davis, Markel & Edwards (Thomas J. Sweeney, III, of counsel), New York City, for defendant Peat Marwick Main & Co.

Weil, Gotshal & Manges (Dennis J. Block, of counsel), New York City, for defendants Salomon Bros., Inc., Bear Stearns & Co., and Wertheim Schroder & Co., Inc.

Wilson Elser Moskowitz Edelman & Dicker (Richard Oelsner, of counsel), New York City, for defendants Penn and Horowitz, J. Liebman & Co., Gary Perlmutter and Mark Halperin.

Hoffman & Pollok, New York City, for defendant Jacob Tambor, Sasson Cohen and Zazy International Corp.

Rosenman & Colin, New York City, for defendants Leonard Rubin, Richard Portnoy and Wren Distributing Co.

Kronish, Lieb, Weiner & Hellman (William O'Brien, Justin N. Feldman, William J. Schwartz, Ivan Kline, of counsel), New York City, for defendant Eddie Antar.

Beldock Levine & Hoffman (Brian E. Mass, of counsel), New York City, for defendant Isaac Kairey.

Leader & Berkon (Frederick D. Berkon, of counsel), New York City, for defendants Solomon E. Antar, Eddy Antar, Steve Pasquariello, Edmond Levy and Carl G. Zimel.

Friedman & Kaplan, New York City, for defendant Eddie Gindi.

David M. Rubin, New York City, for defendant Abraham Grinberg.

Morgan, Lewis & Bockius (Kevin T. Rover, of counsel), New York City, for defendant David V. Panoff.

Kelley, Drye & Warren (John P. Marshall, of counsel), New York City, for defendant James H. Scott, Jr.

Jean Cocchiara, pro se.

Kathleen Morin, pro se.

William H. Saltzman, pro se.

David Neiderbach, pro se.

Arnold Spindler, pro se.

Hellring Lindeman Goldstein & Siegal (Stephen L. Dreyfuss, Matthew E. Moloshok, of counsel), Newark, N.J., for defendants Danielle Antar, Deborah Rosen Antar, Gabrielle Antar, Simone Antar, Nicole Antar and Noelle Antar.

Law Offices of Raoul Lionel Felder, P.C., New York City, for defendant Deborah Rosen Antar.

Gersten, Savage, Kaplowitz & Curtin, New York City, for defendants Michelle Antar, Rose Antar, Rose M. Antar, Rori Antar, Sam A. Antar, Sam M. Antar, Adam Kuszer, Benjamin Kuszer, Ellen Kuszer, Simon Kuszer and Lillian Rosen.

Kostelanetz Ritholz Tigue & Fink, New York City, for defendants Rose Antar and Sam M. Antar.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

There have now been nine actions filed in this court by the various plaintiffs alleging violations of law concerning Crazy Eddie, Inc., a now bankrupt electronics retailer.

The court has before it motions to dismiss all or some part of the complaints brought under the Securities Act of 1933 (the Securities Act), 15 U.S.C. § 77a *et seq.*, the Securities Exchange Act of 1934 (the Exchange Act), 15 U.S.C. § 78a *et seq.*, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, and state law.

Plaintiffs also appeal from a discovery order of Magistrate Judge Carter.

The court assumes familiarity with its previous published memoranda and orders dated December 30, 1988, *Bernstein v. Crazy Eddie, Inc.*, 702 F.Supp. 962 (E.D.N.Y.1988) (the 1988 Order); June 16, 1989, *In re Crazy Eddie Sec. Litig.*, 714 F.Supp. 1285 (E.D.N.Y.1989) (the 1989 Order); June 19, 1990, *In re Crazy Eddie*

*Sec. Litig.*, 740 F.Supp. 149 (E.D.N.Y.1990) (the June 1990 Order); September 19, 1990, *In re Crazy Eddie Sec. Litig.*, 747 F.Supp. 850 (E.D.N.Y.1990) (the September 1990 Order); and March 6, 1991, *In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39 (E.D.N.Y. 1991) (the 1991 Order).

## I

The first complaint with which the court dealt was styled "consolidated and amended complaint," *Bernstein v. Crazy Eddie, Inc.*, 87–CV–33, and will be called the First Complaint. It alleged claims by plaintiffs, as purchasers of the common stock of defendant Crazy Eddie, Inc. (Crazy Eddie), against Crazy Eddie and various of its former officers, directors, accountants, and underwriters. That pleading invoked the Securities Act of 1933 (the Securities Act), 15 U.S.C. § 77a *et seq.* (1982 & Supp. IV 1986), the Securities Exchange Act of 1934 (the Exchange Act), 15 U.S.C. § 78a *et seq.* (1982 & Supp. IV 1986), the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* (1982 & Supp. IV 1986), and state law.

The First Complaint asserted, among other things, that defendants made or aided and abetted the making of materially false and misleading statements and omissions in connection with three public offerings of Crazy Eddie securities, two offerings of stock, one in March 1985 and one in March 1986, and one offering of debentures in 1986, and in connection with the sale of Crazy Eddie securities in general, causing plaintiffs to purchase the securities at a price higher than they would have paid had the truth about Crazy Eddie been known.

In substance the allegations were that Crazy Eddie, a New York corporation founded by Eddie Antar and controlled by his family, first sold shares to the public in September 1984. Between that time and November 1987, although not in all cases throughout that period, the individual defendants were its directors or officers. During that period defendant Peat Marwick Main & Co. (Peat Marwick) and its predecessor certified the financial statements that Crazy Eddie filed with the Securities and Exchange Commission (SEC) and disseminated to the public.

Crazy Eddie made three public offerings of securities underwritten by defendants Oppenheimer & Co. (Oppenheimer), Wertheim Schroder & Co. (Wertheim), Bear, Stearns & Co. (Bear Stearns) and Salomon Brothers, Inc. (Salomon). Crazy Eddie offered shares of common stock in March of 1985 and 1986, and convertible subordinated debentures in June of 1986.

The First Complaint described defendants' alleged participation in (1) material misstatements and omissions in registration statements and prospectuses, in violation of Sections 11 and 12 of the Securities Act, (2) the employment of devices, schemes, and artifices to defraud and the making of material misstatements and omissions falsely assuring investors of Crazy Eddie's financial condition, in violation of state law and Section 10(b) of the Exchange Act and Rule 10(b)–5 adopted under it, and (3) the commission of violations of RICO.

In 1988 those who purchased Crazy Eddie in 1987 filed a separate complaint against Peat Marwick and various individuals associated with Crazy Eddie during the time of the alleged fraud. *Oppenheimer–Palmieri Fund v. Peat Marwick*, 88–CV–3481. That complaint made claims similar to those alleged in the First Complaint under the Securities and Exchange Acts and state law and joined as defendants Peat Marwick and various prior officers and directors of Crazy Eddie. The complaint asserted that between May and October 1987 the Oppenheimer–Palmieri plaintiffs, in reliance on misleading statements and omissions of defendants made in 1986 and 1987, bought substantial amounts of Crazy Eddie stock and were damaged as a result.

In May 1989 the Oppenheimer–Palmieri case was consolidated for pre-trial purposes with *Bernstein v. Crazy Eddie, Inc.*, and the consolidated action bears the title *In re Crazy Eddie Securities Litigation.*

In 1988 and 1989 three new complaints were filed by purchasers of Crazy Eddie common stock. *Krim v. Crazy Eddie*, 88–CV–1592; *Stepak v. Crazy Eddie*, 88–CV–

1593; *Abrams v. Crazy Eddie*, 89–CV–1640. Those complaints alleged claims similar to those stated in the First Complaint.

In addition, on January 17, 1989 James R. Schwebel, an alleged purchaser of the June 1986 debentures during the class period, filed a separate class action, *Schwebel v. Crazy Eddie, Inc.*, 89–CV–165 (the Schwebel Complaint). Schwebel alleged claims under Sections 11 and 12 of the Securities Act, Sections 10(b) and 20 of the Exchange Act, and state law against many of the defendants named in the First Complaint for misconduct relating to the sale of the debentures.

The next complaint in *In re Crazy Eddie Securities Litigation,* filed in October 1989, was called "second amended consolidated and supplemental complaint," and will be referred to as the Second Complaint. It was in substantial part identical to the First Complaint, but also dropped Crazy Eddie, then in bankruptcy, as a defendant, added and amended certain claims, and added new defendants, including Penn & Horowitz, an accounting firm that performed auditing and other services in the early 1980's, and its successor J. Liebman & Co. The Second Complaint also added Schwebel, Krim, Stepak and Abrams as plaintiffs and repleaded the Securities Act, Exchange Act and state law claims based on the debenture offering. In the 1988 Order the court had dismissed these claims because none of the then plaintiffs was a debenture holder. *See* 702 F.Supp. at 972.

While Schwebel was added as a plaintiff to the Second Complaint his action was consolidated with *In re Crazy Eddie Securities Litigation* for purposes of discovery only. 747 F.Supp. at 853. The court has also treated the actions brought by Krim, Stepak and Abrams as part of the consolidated action.

In the September 1990 Order, 747 F.Supp. 850, the court, among other things, dismissed as time-barred the Securities Act claims against the underwriter Oppenheimer based on the Oppenheimer Sales and the claims against Eddy Antar, Zimel, Wertheim, Bear Stearns, Salomon, and Peat Marwick based on the 1986 debenture of-fering, and dismissed with leave to replead the Exchange Act claims against Penn & Horowitz and the RICO claim against Solomon E. Antar.

That Order also dismissed from the Schwebel Complaint the Securities Act claims against various defendants with leave to replead.

The plaintiffs commenced yet another action, *Bernstein v. Rose Antar*, 90–CV–3181, naming as defendants family members and business associates of Eddy Antar and alleging violations of federal securities laws, RICO and state law. This action is not consolidated in *In re Crazy Eddie Securities Litigation.*

On November 8, 1991 plaintiffs, without obtaining leave of court, filed what they called a third amended and consolidated complaint (the Third Complaint). Five days thereafter plaintiffs filed a new action, *Bernstein v. Antar*, 91–CV–4450, making allegations in the complaint (the New Complaint) virtually identical to those in the Third Complaint.

The most recent case, *Crazy Eddie, Inc. v. Peat Marwick Main & Co.*, 92–CV–75, was transferred to this court from the United States Bankruptcy Court for the Southern District of New York, where the Crazy Eddie bankruptcy proceeding is pending. In that action Crazy Eddie as debtor and debtor in possession seeks to recover from its accountant Peat Marwick for fraudulent conveyance, breach of contract and negligence.

The court has before it motions addressed to the Second Complaint and made before the filing of the Third Complaint and the New Complaint, as well as motions directed to the latter complaints. The court will discuss first the motions relating to the Second Complaint.

## II

## MOTIONS FOR SUMMARY JUDGMENT

Peat Marwick, Wertheim, Bear Stearns, Salomon and Oppenheimer move for partial summary judgment dismissing the claims against them under (1) Sections 11 and

12(2) of the Securities Act, (2) Section 10(b) of the Exchange Act and Rule 10(b)-5 of the rules promulgated thereunder, and (3) principles of common law fraud and negligent misrepresentation.

## A. THE SECURITIES ACT CLAIMS

Section 11 provides in pertinent part that if any part of a registration statement "contain[s] an untrue statement of a material fact or omit[s] to state a material fact required ... to make the statements therein not misleading," any person acquiring such security may sue every person who was an accountant named as having certified any part of the statement as to which suit is brought, or who was an underwriter with respect to the security. 15 U.S.C. § 77k.

Section 12(2) of the Securities Act provides, in part, that any person who offers or sells a security "by means of a prospectus" that "includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading" shall be "liable to the person purchasing such security from him." 15 U.S.C. § 77l(2).

### 1. *The Tracing Requirement*

■ Defendants argue that the Section 11 and 12(2) claims fail because plaintiffs cannot trace their holdings to the challenged offerings.

In the 1988 Order the court detailed the tracing requirement for these claims and dismissed with leave to amend the Section 11 and 12(2) claims for failure to plead that plaintiffs' shares could be so traced. 702 F.Supp. at 972. Plaintiffs then repleaded these claims to make such allegations.

The parties have completed discovery on this issue and the motion is one for summary judgment. To meet their burden, plaintiffs must produce evidence to show that their shares are traceable to the allegedly defective offerings and not to Crazy Eddie's initial public offering or registration-exempt sales made by members of the company's former management pursuant

to Rule 144. In other words plaintiffs must show something from which a jury could conclude that they own "new" stock and not "old" stock. *See In re LILCO Sec. Litig.,* 111 F.R.D. 663, 671 (E.D.N.Y.1986).

Despite access to Crazy Eddie records and shareholder lists, no plaintiff except Schwebel has come forth with anything suggesting that his or her securities can be traced to a challenged offering. Indeed, plaintiffs concede they have been unable to establish tracing, but they say that because the securities industry has been computerized, this requirement is now virtually impossible to meet. They ask the court to modify the tracing requirement so as to rescue their claims under Sections 11 and 12(2).

The court follows *Barnes v. Osofsky,* 373 F.2d 269, 271–273 (2d Cir.1967), which remains the law in this circuit. If Congress wishes to ease the burden on security holders such as plaintiffs, it can do so.

### 2. *Statute of Limitations*

■ Plaintiff Schwebel holds debentures issued in Crazy Eddie's 1986 offering and therefore has standing to raise claims under Sections 11 and 12(2). Defendants say his claims are barred by the statute of limitations.

Section 13 of the Securities Act of 1933 provides in part that:

"[n]o action shall be maintained to enforce any liability created under [Section 11 or Section 12(2)] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence ..."

15 U.S.C. § 77m.

Schwebel filed his complaint on January 19, 1989 and alleges that he could not reasonably have discovered the facts underlying his claim until January 19, 1988.

In the September 1990 Order the court dismissed with leave to replead Schwebel's Section 11 claim in the Second Complaint because it failed to set forth facts showing why he could not have discovered the false

statements as to the debenture offering in November 1987, when the new management of Crazy Eddie announced an estimated inventory shortfall of approximately $45 million. 747 F.Supp. at 856. When defendants filed their motion for summary judgment in July 1990 plaintiffs had not yet repleaded to comply with the court's requirement.

Even if plaintiffs had repleaded what they put in their improperly filed Third Complaint, it would not have helped Schwebel. The Third Complaint says the fraud was not discovered until January 18, 1988 when new management announced a $65 million inventory shortage, and that before that time it was "impossible" to know whether the acts causing the inventory shortfall announced on November 14, 1987 were or were not of recent origin.

The statute of limitations begins to run when a plaintiff should have discovered the general fraudulent scheme, not when a plaintiff should have known all the details of the alleged fraud. *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir.1975). Schwebel had such notice as of November 1987. His claims under Sections 11 and 12(2) are time barred, unless as to certain defendants the statute of limitations was tolled by so-called standstill agreements.

■ Plaintiffs argue that various "standstill agreements" with Oppenheimer, Bear Stearns, Wertheim and Salomon signed by the named plaintiffs in the First Complaint, but not by Schwebel, toll the statute of limitations for his claims. In substance these agreements dismissed certain defendants from the action without prejudice, and recited that in the event those plaintiffs later joined them in the action based on the First Complaint or an amendment to it authorized by the Federal Rules of Civil Procedure, the statute of limitations would be tolled as to those plaintiffs' "claims against [them] set forth in the Consolidated and Amended Complaint [the First Complaint]."

The standstill agreements do not affect the Schwebel claims. The agreements tolled the statute of limitations only with respect to the claims of the individual plaintiffs in the First Complaint. Schwebel was not named a plaintiff in that complaint. The court does not read the agreement to toll the limitations period for claims of persons who might later become parties. Thus the limitations period for Schwebel's claim was not tolled. Nor indeed were the individual claims of any other plaintiffs who were not parties at the time of the execution of the standstill agreements.

## B. THE FRAUD CLAIMS

Defendants Peat Marwick, Wertheim, Bear Stearns, Salomon, and Oppenheimer urge that plaintiffs' Section 10(b) and Rule 10(b)–5 claims are barred by the statute of limitations, and that the common law claims for fraud and negligent representation should be dismissed because plaintiffs cannot prove reliance on the alleged misrepresentations.

On April 9, 1992 defendants submitted a letter to the court requesting it to consider the constitutionality of a statute relevant to its decision on the statute of limitations issue. The court directed the parties to brief the question, and reserves its decision on all the fraud claims, including the common law claims, until it can consider the parties' arguments.

### III

### THE THIRD COMPLAINT AND THE NEW COMPLAINT

Without leave of court plaintiffs filed the Third Complaint, adding new defendants and new claims against existing defendants. Of the approximately thirty new defendants added to the Second Complaint, thirteen have never been parties in any of the Crazy Eddie consolidated or related actions. Fourteen of the new defendants are parties in *Bernstein v. Rose Antar*, which is not consolidated with *In re Crazy Eddie Securities Litigation*.

■ Plaintiffs were not entitled to amend the Second Complaint as of right under Federal Rule of Civil Procedure 15, because they already so amended once by

filing the Second Complaint which repleaded certain claims with leave of the court but also added new defendants and expanded the class period. *See Glaros v. Perse*, 628 F.2d 679, 686 (1st Cir.1980); *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 203–204 (7th Cir.1985).

Nor did plaintiffs have leave to amend the Second Complaint. The court therefore treats the Third Complaint as without legal effect. *See Gaumont v. Warner Bros. Pictures, Inc.*, 2 F.R.D. 45, 46 (S.D.N.Y. 1941) (amendment to complaint stricken where plaintiff failed to comply with Rule 15(a)); *Hoover v. Blue Cross and Blue Shield of Alabama*, 855 F.2d 1538, 1544 (11th Cir.1988).

■ The court denies plaintiffs' motion to amend to allege the entire Third Complaint *nunc pro tunc*. Evaluating plaintiffs' proposed amendments under Rule 15(a), the court finds no good reason to allow plaintiffs to add numerous new defendants, some of whom have had to appear *pro se*, and none of whom appears to have played a significant part in the transactions at issue. Undue delay and undue prejudice to the opposing parties are justifiable reasons to deny leave to amend. *U.S. v. Continental Illinois Nat. Bank and Trust Co.*, 889 F.2d 1248, 1254 (2d Cir.1989) (*quoting Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

Nor will the court allow plaintiffs to consolidate the new action with *In re Crazy Eddie Securities Litigation*, thereby evading the requirements of Rule 15. *See Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir.1977) (*en banc*).

Neither Jean Cocchiara nor Kathleen Morin, former Crazy Eddie employees who appeared before the court *pro se*, are proper parties in the Second Complaint. Plaintiffs did not name Cocchiara as a defendant in that complaint. Though the Second Complaint named Morin, she says she was never served with it and did not know she was a party in this action until she was served with the Third Complaint and New Complaint in November 1991. Plaintiffs have not come forth with an affidavit of service of the Second Complaint or evidence refuting her statements. Their affidavit stating that a notice of deposition was sent to Morin on May 30, 1991 and her subsequent appearance at a deposition in October 1991 does not mean that she was a properly-served defendant at the time.

Nor will the court permit plaintiffs to amend the Second Complaint at this late date to include Penn & Horowitz as a defendant. In September 1990 the court dismissed with leave to replead the Section 10(b) claim against Penn & Horowitz for failure to allege fraud with particularity and for failure to state a claim for aider and abettor liability under that statute. As of the date of that order, Penn & Horowitz was no longer a party in this action.

The Third Complaint, filed over one year after the order, states new claims against Penn & Horowitz for violations of RICO, common law fraud and negligent representation. Penn & Horowitz is not named as a defendant in the Exchange Act count but it is mentioned in the allegations under that count.

Because Penn & Horowitz will be prejudiced by plaintiffs' unreasonable and unjustifiable delay in repleading the Exchange Act claim, and because the Third Complaint does not fairly alert Penn & Horowitz as to whether plaintiffs intended to plead an Exchange Act claim against it, plaintiffs may not amend the Second Complaint to include Penn & Horowitz. Plaintiffs may use their New Complaint to raise any claims they have against this defendant.

■ The court will allow plaintiffs to apply for leave to file a properly pleaded RICO claim against Peat Marwick under 18 U.S.C. § 1962(c), with sufficient and specific allegations of the requisite predicate acts of mail or wire fraud. A RICO claim against Peat Marwick would be insufficient if based on predicate acts of "fraud in the sale of securities," 18 U.S.C. § 1961(1)(D), because Peat Marwick did not engage in the sale of securities. *In re Par Pharmaceutical Inc., Sec. Litig.*, 733 F.Supp. 668, 684 (S.D.N.Y.1990).

Plaintiffs say they recently discovered new information supporting the RICO claim against Peat Marwick. In their brief they say that depositions of defendants James Scott, Jr. and William Saltzman revealed for the first time that Peat Marwick partner Al Ferrara made what plaintiffs believe are affirmative misrepresentations to the Crazy Eddie Audit Committee of the Board of Directors relating to a purported investigation of transactions by Crazy Eddie. Plaintiffs also say in their brief dated December 13, 1991 that further investigation "within the last month" revealed that Ferrara discovered the fabrication of the product sales by category figures included in the prospectus for the March 1986 offering, but represented to defendants Bear Stearns, Wertheim, and Salomon that those figures were reliable and accurate.

Peat Marwick had notice of the facts that give rise to this alleged RICO claim because it relates to the fraud and other claims set forth in the Second Complaint. The only new fact is that Ferrara, a Peat Marwick partner, "actually knew" of the fraud committed by Eddie Antar and others yet made affirmative representations that the financial statements were clean. Whether plaintiffs can prove the scienter requirements of wire and mail fraud is not now at issue.

Although Peat Marwick will have to investigate the new fact of knowledge, it will not be unduly prejudiced by the addition of the RICO claim. *See Kuczynski v. Ragen Corp.,* 732 F.Supp. 378, 381–383 (S.D.N.Y. 1989) (permitting addition of RICO claim after discovery had ended); *Rodonich v. House Wreckers Union Local 95 of Laborers' International Union of North America,* 624 F.Supp. 678, 686 (S.D.N.Y.1985) (permitting addition of RICO claim on the eve of trial).

Plaintiffs claim to have a good faith basis for their new allegations. They have not presented to the court the basis for their new assertion that Ferrara "actually knew" of the ongoing fraud. But the court may not require them to do more than meet the pleading requirements under the rules of procedure. *See Mountain View Phar-*

*macy v. Abbott Laboratories,* 630 F.2d 1383, 1385–86 (10th Cir.1980). Peat Marwick may move to dismiss or for summary judgment if appropriate.

Plaintiffs shall have twenty days from the date of this order to apply for leave to so amend.

## IV

## OBJECTIONS TO DISCOVERY ORDER

Plaintiffs Entertainment Marketing Incorporated ("EMI") and Elias Zinn have appealed from two aspects of Magistrate Judge Carter's discovery order of December 18, 1991 in *Oppenheimer–Palmieri Fund v. Peat Marwick,* 88–CV–3481.

## A. PRIVILEGE OF SELF–CRITICAL ANALYSIS

Magistrate Judge Carter excused Peat Marwick from producing an internal review of the 1987 Crazy Eddie audit conducted by Peat Marwick in August 1987 and a 1987 Peer Review report and letter of comments on internal quality controls. Plaintiffs argue that this ruling improperly recognized a "privilege of self-critical analysis."

A "privilege of self-critical analysis" or a "self-evaluative privilege" serves the public interest by encouraging self-improvement through uninhibited self-analysis and evaluation. *Lasky v. American Broadcasting Cos., Inc.,* 5 Fed.R.Serv.3d 1366, 1986 WL 9223 (S.D.N.Y.1986) (recognizing self-evaluative privilege in cases of violations of securities laws, medical malpractice, violations of civil rights and libel); *New York Stock Exchange, Inc. v. Sloan,* 22 Fed. R.Serv.2d 500 (S.D.N.Y.1976).

The privilege is not absolute. It applies only to the analysis or evaluation itself, not to the facts upon which the evaluation is based, *see Burka v. New York City Transit Authority,* 110 F.R.D. 660, 667 (S.D.N.Y.1986) (discussing government's deliberative privilege), and must be balanced against the party's need for discovery fully and fairly to determine the issues. *Lasky, supra; Gray v. Board of*

*Higher Education of the City of New York,* 692 F.2d 901, 904–906 (2d Cir.1982).

Peat Marwick asserts that production of the materials would chill its attempt to monitor the quality of its work. The court is somewhat skeptical of a claim of a chilling effect, *King v. Conde,* 121 F.R.D. 180, 192–193 (E.D.N.Y.1988), but it is not without weight.

In addition, Magistrate Judge Carter found that the information underlying the reviews is available for the parties' experts to consider. Plaintiffs have thus failed to demonstrate a need for the documents that outweighs defendants' claim of privilege.

The court affirms the order.

## B. TESTIMONY

Magistrate Judge Carter also denied plaintiffs' December 5, 1991 request to redepose Teddy Chasnoff, the partner in charge of the 1987 audit. Because that ruling was not clearly erroneous it is affirmed.

## V

## SUMMARY

The court decides the pending motions as follows:

i) *The Securities Act Claims.* Defendants' motion for summary judgment with respect to claims brought under Sections 11 and 12(2) is granted.

ii) *The Fraud Claims.* The court reserves decision on defendants' motions for summary judgment with respect to the Section 10(b), Rule 10(b)–5 and common law claims.

iii) *The Complaints.* The Third Complaint is stricken. Plaintiffs may seek leave within twenty days of the date of this order to amend the Second Complaint to plead a proper RICO claim against Peat Marwick. The motions to strike the New Complaint are denied. Plaintiffs may not consolidate the New Complaint with *In re Crazy Eddie Securities Litigation.*

iv) *The Discovery Rulings.* Magistrate Judge Carter's discovery orders are affirmed.

So ordered.